## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEFFREY MCCANTS,        ) | |
|           ) | |
|       Plaintiff,     ) | |
|           ) | |
|      v.           ) | C.A. No. 04-257 (KAJ) |
|           ) | |
| WAWA, INC.,        ) | |
|           ) | |
|       Defendant.    ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Dated: March 30, 2005

Sean McDevitt (DSB#2894)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

Susan K. Lessack
Stephanie A. Bilenker
PEPPER HAMILTON LLP
400 Berwyn Park
899 Cassatt Road
Berwyn, PA 19312-1183
(610) 640-7800

Attorneys for Defendant

## I.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This case involves allegations of race and religious discrimination and retaliation in connection with plaintiff Jeffrey McCants' employment as a store manager with defendant Wawa, Inc. which ended when McCants resigned in August 2002.  After resigning, McCants filed a charge with the Delaware Department of Labor ("DDOL").  McCants received a right to sue letter on January 21, 2004.  On April 21, 2004, McCants filed a three-count complaint alleging that Wawa discriminated and retaliated against him in violation of Title VII and § 1981 of the Civil Rights Act.  Wawa answered the complaint on May 14, 2004.  The parties then engaged in discovery which closed on March 4, 2005.  Wawa now moves for summary judgment on all counts.

## II.    SUMMARY OF ARGUMENT

Each of McCants' claims fails as a matter of law on the undisputed facts. McCants alleges that:  (1) Wawa discriminated against him on the basis of race when it did not promote him to manage a higher-volume store with a gas station; and then (2) discriminated and retaliated against him on the basis of race and religion when it demoted him to an assistant manager position approximately six months later.  Summary judgment should be granted in Wawa's favor because the record is bare of evidence on which a trier of fact could infer discrimination or retaliation.  More particularly, Wawa is entitled to summary judgment for the following compelling reasons:

1. There is no evidence that McCants did not get the promotions he sought because of race.  The only evidence of discrimination that McCants articulates on his failure to promote claim is that there were no other black gas store managers in Delaware, and that he believed that there was not a strong showing of blacks in upper management at Wawa's corporate offices.  McCants admitted that he had no personal knowledge of the races of gas store

managers outside Delaware, and that his belief about the racial makeup of black employees at

Wawa's corporate offices was based on hearsay. This is not evidence that Wawa did not select

McCants for the gas store positions because of his race. Indeed, it is undisputed that McCants

was not selected because the decision-makers did not believe that he was the most qualified

candidate. McCants admitted that he did not know the qualifications of the other candidates or

which qualifications Wawa viewed as important. Because there is no evidence that race played

any role in McCants' failure to get the promotion, Wawa is entitled to summary judgment on

McCants' promotion claim.

     2. <u>Wawa did not discriminate against McCants on the basis of race or religion</u>

<u>when it demoted him to assistant manager.</u> Wawa demoted McCants because he lacked

commitment and failed to cure morale problems in his store, and McCants has offered no

evidence to rebut this legitimate, nondiscriminatory reason.

     Preliminarily, because McCants resigned, he has to prove that he was

constructively discharged to show that Wawa took adverse action against him. McCants,

however, cannot prove constructive discharge because after being told that he would be demoted

from store manager to assistant store manager, he never returned to work. Consequently, there is

no evidence that conditions were so intolerable in the new position that a reasonable person

would have felt compelled to quit.

     The only evidence McCants cites in support of his race claim concerning

the demotion is that he was demoted because he made a comment to one of his supervisors about

diversity at Wawa. This is not evidence that Wawa demoted McCants because of his race.

     As for his religious discrimination claim, the only evidence McCants cites

is a benign comment by his supervisor that McCants did not work on Sundays because he

attended church. McCants admitted that Wawa never required him to work Sundays, and that he voluntarily chose to work some Sundays. This comment is woefully insufficient to state a claim for religious discrimination.

For these reasons and others discussed below, McCants' claims that he was demoted because of his race and religion fail as a matter of law on the undisputed facts.

3. Finally, there is no evidence that Wawa retaliated against McCants by demoting him to an assistant manager position. McCants cannot establish even a *prima facie* case of retaliation. First, McCants' retaliation claim fails because he never engaged in any protected activity. According to McCants, he made a comment to one of his supervisors about "diversity" at Wawa. He did not connect this comment to any adverse employment practice, and, in fact, specifically disavowed that it was related to his employment. As a matter of law, such a comment is simply not protected activity under Title VII, which protects opposition to "an unlawful employment practice," not a general opinion about a company's workforce. Second, McCants' retaliation claim fails because he cannot prove constructive discharge. Third, McCants cannot prove retaliation because there is no evidence of a causal connection between the alleged diversity comment and his demotion.

## III.   **STATEMENT OF UNDISPUTED FACTS**

### A. **McCants' Early Employment With Wawa**

Wawa is a convenience store retailer based in Wawa, Pennsylvania, that owns and operates a dairy and beverage center and more than 540 convenience stores located throughout the Mid-Atlantic region. Approximately 150 of its stores also are high volume gasoline retailers sometimes referred to as "superstores."

McCants was hired to work for Wawa in October 1997 and began work as an assistant manager at one of Wawa's Delaware stores. (*See* Ex. 1, Deposition of Jeffrey McCants

("McCants Dep."), November 1, 2004, at 123-24.) In September 2000, McCants was promoted to manage store 825 in New Castle, Delaware (a non-gas store). (Ex. 1, McCants Dep. at 126.) While at store 825, McCants first reported to Store Supervisor Rick Downes (white) and then reported to Store Supervisor John Poplawski (white). (Ex. 1, McCants Dep. at 42, 126-27.) McCants believed that he had good relationships with Downes and Poplawski. (Ex. 1, McCants Dep. at 127.) In fact, Downes asked McCants to participate in a recruitment campaign for Wawa and placed a photograph of him and his son on a recruitment poster. (Ex. 1, McCants Dep. at 128.)

**B.   McCants Applies For A Promotion To Manage Store 840.**

In October 2001, after managing store 825 for only one year, McCants applied to manage store 840 which was a "superstore." (Ex. 1, McCants Dep. at 42.) Store 840 was a more challenging store to run than 825. (*See* Ex. 2, Deposition of John Poplawski ("Poplawski Dep."), at 28-29; Ex. 1, McCants Dep. at 89.) Because it was a gasoline store, it involved the added responsibilities of managing fuel, additional personnel and additional square footage. (Ex. 1, McCants Dep. at 89; Ex. 2, Poplawski Dep. at 21.) Further, it was one of the highest profit-producing stores in the area and was a much higher-volume operation than store 825. (Ex. 2, Poplawski Dep. at 21, 25, 28.)

In addition to McCants, three other managers applied for the job: Tom Grant (white), George Shelton (white) and Gary Smith (white). (*See* Ex. 3, Matrix of Store 840 Interview Process ("Interview Matrix"); Ex. 2, Poplawski Dep. at 71.) Poplawski and his supervisor, Jim Shortall, interviewed each applicant. (Ex. 2, Poplawski Dep. at 22-23.) They scored the applicants in thirteen categories that related to experience and current performance. (Ex. 3, Interview Matrix; Ex. 2, Poplawski Dep. at 22-39.) Shelton received the highest total score and was selected for the job. (Ex. 1, McCants Dep. at 52, 83.) Shelton was more qualified

than the other candidates because he had significant prior experience managing a gas store; at the

time, he was manager of store 841, which was the second highest volume gas store in Delaware.

(Ex. 2, Poplawski Dep. at 28-29, 42-43; *see also* Ex. 1, McCants Dep. at 56-57.)  While McCants

had worked as an assistant manager at store 840 for approximately one year early in his career,

he had never worked as a gas store manager.  (Ex. 1, McCants Dep. at 102-03; Ex. 2, Poplawski

Dep. at 25.)  It is undisputed that store managers have more responsibility for store operations

than assistant store managers.  (Ex.1, McCants Dep. at 89; Ex. 2, Poplawski Dep. at 25.)

Moving Shelton to store 840 created an opening at store 841, and Poplawski and

Shortall considered McCants, Grant and Smith as well as Chris Casey (white), the then-current

manager of store 842, for the opening.  (Ex. 2, Poplawski Dep. at 41.)  Casey, who lived in

Delaware, had been a gas store manager in Maryland, but chose to transfer back to a non-gas

store in Delaware (which was the third-highest volume store in Delaware) because of the

commute.  (Ex. 2, Poplawski Dep. at 41-42.)  Poplawski selected Casey for 841 because he felt

that Casey was the best fit – he had previously managed a gas store, had expressed an interest to

return to a gas store and had been performing extremely well at his current store, which was a

much higher volume store than the other candidates' stores.  (Ex. 2, Poplawski Dep. at 43-44.)

Casey's transfer to 841 then left an opening at store 842 where Poplawski placed

Grant, and Grant's transfer to 842 left an opening at store 811 which went to McCants.  (Ex. 1,

McCants Dep. at 104; Ex. 2, Poplawski Dep. at 48-49.)  Each move was considered a promotion

for the manager involved because it meant leaving a lower-volume store for a higher-volume

store where there was an opportunity to earn a higher income.  (Ex. 1, McCants Dep. at 104;

Ex. 2, Poplawski Dep. at 48-49.)  Poplawski believed that McCants would benefit from gaining

experience in a higher-volume store, with the opportunity to expand his skill and knowledge of

company operations. (Ex. 2, Poplawski Dep. at 48-49.) Poplawski told McCants that if he performed well there, he would be better positioned for future gas store manager openings. (Ex. 2, Poplawski Dep. at 48-49.)

McCants admits that he does not know anything about Shelton's or Casey's qualifications, nor does he know what qualifications Wawa valued in making the selection decisions. (Ex. 1, McCants Dep. at 55-57, 87, 104.) When Poplawski notified McCants that he was not selected for 840 and 841, McCants asked why he was not chosen. (Ex. 2, Poplawski Dep. at 42; Ex. 1, McCants Dep. at 43.) Poplawski explained that Shelton and Casey were selected because they had more gas experience and more high volume store experience. (Ex. 2, Poplawski Dep. at 42-44.) McCants told Poplawski that he thought he should have gotten the job because he had been an assistant manager at 840. (Ex. 2, Poplawski Dep. at 44.) According to McCants, he also asked Poplawski about a "lack of diversity" at Wawa to which Poplawski allegedly responded that "Wawa doesn't do a good job on diversity."[1] (Ex. 1, McCants Dep. at 47.) McCants testified that he never raised the subject again to Poplawski. (Ex. 1, McCants Dep. at 45, 47, 82, 221.) McCants never filed an internal complaint or grievance after failing to be promoted to gas store manager. (Ex. 1, McCants Dep. at 89.) He also never complained to anyone at Wawa about race discrimination. (Ex. 1, McCants Dep. at 218-21.)

---

[1] McCants testified that the only comment he ever made about diversity was this comment to Poplawski. (Ex. 1, McCants Dep. at 82.) However, McCants later testified inconsistently that he "believed" that he repeated the diversity comment at the May 31, 2002 meeting with supervisors Joseph Gallagher and Michael Stief. (Ex. 1, McCants Dep. at 219-20.) Even accepting this as true, the May 31, 2002 comment would have been made after it had already been decided to demote McCants, and thus could not have had any effect on the decision to demote. Joseph Gallagher, who was McCants' area supervisor following Poplawski, testified that he overheard McCants make a comment about diversity shortly after he became area supervisor. (Ex. 4, Deposition of Joseph Gallagher ("Gallagher Dep."), Nov. 23, 2004, at 58, 60). McCants did not present this evidence in support of his retaliation claim. Nevertheless, even assuming for purposes of this motion that a comment about diversity was made to both Poplawski and Gallagher, as explained *infra*, there is still insufficient evidence of retaliation to overcome summary judgment.

## C. **McCants Becomes Manager Of Store 811.**

McCants began managing store 811 in November 2001. The following month, John Poplawski became a Wawa Human Resources Manager and Joe Gallagher (white) became the new store supervisor for area 8 which included McCants' store. (Ex. 2, Poplawski Dep. at 52; Ex. 1, McCants Dep. at 158.) Gallagher had over thirty years of experience with Wawa in various management positions. (Ex. 4, Gallagher Dep. at 3.)

Soon after McCants started working at store 811, associates began complaining to Poplawski (and later Gallagher) that McCants did not appear committed to the store because he was not there often enough, and when he was at the store, he would stay in the office rather than help them with customers on the sales floor. (Ex. 2, Poplawski Dep. at 52; Ex. 4, Gallagher Dep. at 36.) Consequently, before changing jobs, Poplawski had conversations with McCants about how McCants needed to work side by side with his new associates to build trust and rapport. (Ex. 2, Poplawski Dep. at 50-53.)

When Gallagher took over, the store associates' criticism of McCants' lack of presence on the sales floor continued. (Ex. 4, Gallagher Dep. at 36-38.) Also, on store visits, Gallagher noticed that McCants was often not there. (Ex. 4, Gallagher Dep. at 34.) When Gallagher asked the store associates where McCants was, they told him that McCants had left for the day. (Ex. 4, Gallagher Dep. at 34.)

These incidents prompted Gallagher to examine McCants' timesheets. (Ex. 4, Gallagher Dep. at 34.) Although managers are required to work and are paid for 46.75 hours a week, Gallagher discovered that McCants was working only an average of 36 hours a week in January and February 2002. (*See* Ex. 5, Written Warning Provided to McCants On Compliance to Required Schedule ("Written Warning").) Gallagher met with McCants to give him a written warning for violating company policy, and informed McCants that he had to work the required

number of hours or he would be terminated. (*See* Ex. 5, Written Warning.) After receiving the Written Warning, McCants testified that he started working the requisite 46.75 hours per week. (Ex. 1, McCants Dep. at 150; Ex. 4, Gallagher Dep. at 36.)  Time clock records indicate, however, that McCants' time cards in April and May were edited.  (Ex. 4, Gallagher Dep. at 63-64; *see* Ex. 6, McCants' Time Cards from April-May 2002.)  McCants did admit that he never spent a substantial number of hours working in his store, and he could not recall if he ever worked more than fifty hours in a week.  (Ex. 1, McCants Dep. at 150-51.)

Over the next few months, Gallagher continued to monitor McCants' performance, and discussed the store's continuing morale issues with McCants.  (Ex. 4, Gallagher Dep. at 36-40.)  On March 18, 2002, Gallagher met with McCants to discuss various problems in the store.  (*See* Ex. 7, Gallagher's Agenda of March 18, 2002 Meeting with McCants.)  Gallagher later sent an e-mail to McCants explaining that morale was not improving because McCants was not working out on the sales floor or holding associates accountable for their work.  (*See* Ex. 8, April 15, 2002 E-mail from Gallagher to McCants.)  In addition, it is undisputed that Gallagher visited with McCants at least one to two times a week to discuss store conditions.  (Ex. 1, McCants Dep. at 182-83; Ex. 4, Gallagher Dep. at 28.)

In April 2002, Wawa's internal auditor notified Gallagher that there were problems with McCants' store paperwork.  (*See* Ex. 9, April 17, 2002 E-mail from Gail Skocik to Gallagher.)  Consequently, Gallagher permitted the auditor to spend a day with McCants to review how to complete his paperwork correctly.  (*See* Ex. 10, April 24, 2002 E-mail from Gail Skocik to McCants.)  McCants acknowledged that there were problems with his performance at store 825, namely keeping inventory loss under control and entering invoices properly.  (Ex. 1,

McCants Dep. at 99, 101.) And, he does not dispute that Skocik was sent to help him at 811 with entering bills and recording write offs. (Ex. 1, McCants Dep. at 187-92.)

Despite his ongoing conversations with McCants about the need to improve store morale, Gallagher observed little to no improvement in McCants' performance. (Ex. 4, Gallagher Dep. at 36-41.) Many of the store associates no longer wanted to work for McCants; Gallagher asked those associates to put their complaints in writing.[2] (Ex. 4, Gallagher Dep. at 38-39; *see* Ex. 11, Written Complaints about McCants from Store 811 Associates.)

### D. McCants Is Demoted As A Result of His Failure to Improve Store Conditions.

Ultimately, Gallagher came to the conclusion that he needed to take stronger action to address McCants' lack of commitment and failure to address morale issues. (Ex. 4, Gallagher Dep. at 40.) On May 22, 2002, Gallagher met with McCants to discuss these continuing problems. (*See* Ex. 12, Gallagher's Notes of May 22, 2002 Meeting with McCants ("Notes of May 22, 2002 Meeting").) Gallagher told McCants that despite their prior discussions, there was no improvement in McCants' performance. (*See* Ex. 12, Notes of May 22, 2002 Meeting.)

Rather than place McCants on probation, however, Gallagher wanted to work with McCants to help him become a better manager. (*See* Ex. 12, Notes of May 22, 2002 Meeting.) Gallagher met with McCants and explained how he wanted McCants to remain with Wawa, and thought the best option would be to place McCants in an assistant manager position where he could work with, and learn from, a successful manager, thus increasing the likelihood

---

[2] Though the associates may have provided Gallagher with their written statements following McCants' departure, it is undisputed that Gallagher received complaints from the associates about McCants throughout McCants' tenure, and told them to put their complaints in writing at the time that they complained. (Ex. 4, Gallagher Dep. at 36-38, 69.)

that McCants would be successful in a managerial role in the future.  (*See* Ex. 12, Notes of May 22, 2002 Meeting.)  At the same time, Wawa would keep McCants' salary as close to its current level as possible.  (*See* Ex. 12, Notes of May 22, 2002 Meeting.)  McCants welcomed Gallagher's decision – in fact, he hugged Gallagher at the end of the meeting.  (Ex. 1, McCants Dep. at 64.)  The only concern that McCants voiced to Gallagher was the store associates' perception of his demotion.  (*See* Ex. 12, Notes of May 22, 2002 Meeting; Ex. 4, Gallagher Dep. at 12.)  As a result of McCants' concern, Gallagher permitted McCants to return to the store to inform the associates that he was resigning to pursue other opportunities within Wawa.  (*See* Ex. 12, Notes of May 22, 2002 Meeting.)  McCants testified that for the most part, he did not remember (and therefore cannot dispute) what was said during this meeting.[3]  (Ex. 1, McCants Dep. at 62-66; 69.)

Two days later, McCants apparently changed his mind about the demotion because he called Shortall to complain about it.  (Ex. 1, McCants Dep. at 67-68.)  McCants never said anything about discrimination, nor did he file a grievance under Wawa's grievance policy.  (Ex. 1, McCants Dep. at 74, 219-20.)  After their conversation, Shortall asked Gallagher and Stief to meet with McCants to explain again Wawa's reasons for the demotion, which they did.  (Ex. 1, McCants Dep. at 68-69.)

After the meeting with Gallagher and Stief, McCants was supposed to inform them of his decision as to whether he would accept the assistant manager position in another store, or pursue other corporate opportunities at Wawa.  (Ex. 1, McCants Dep. at 75-76; Ex. 4, Gallagher Dep. at 10.)  McCants speculated that the store he was offered was a lower-production

---

[3] Supposedly, the only part of the meeting that McCants recalled was that he hugged Gallagher; though he downplayed it and said that he did it because he is "a Christian" and hugs everyone. (Ex. 1, McCants Dep. at 64.)

store, but he admittedly had no personal knowledge of his allegation and conceded that his belief

was based on hearsay. (Ex. 1, McCants Dep. at 72-73.) McCants also admitted that he was

interested in pursuing a corporate job at Wawa but never followed up on that option.[4] (Ex. 1,

McCants Dep. at 109-10.) McCants did not contact either Gallagher or Stief until later that

summer, on August 12, 2002, when he left Stief a voice message indicating that he was resigning

from Wawa. (Ex. 1, McCants Dep. at 75-76; 113-14.)

IV.    **ARGUMENT**

    A.    **The Standard For Summary Judgment.**

        Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To be entitled to

summary judgment, the moving party must show that there are no genuine issues of material fact

that would permit a jury to find for the non-moving party. Boyle v. County of Allegheny Pa.,

139 F.3d 386, 393 (3d Cir. 1998). "A fact is material only if it might affect the outcome of this

suit." Id.

        To defeat summary judgment, the non-moving party must raise more than a mere

scintilla of evidence in its favor. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d

Cir. 1989). The non-moving party must come forward with "specific facts showing that there is

a genuine issue for trial." Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp., 475 U.S.

---

[4] McCants testified that he thought he had to manage a gas store in order to be eligible for a job in Wawa's corporate offices. (Ex. 1, McCants Dep. at 110-11.) He had no rational basis for this belief – it was based on hearsay and he never confirmed it with his supervisors. (Ex. 1, McCants Dep. at 111.) Further, it is undisputed that McCants had expressed interest in exploring other corporate opportunities. (Ex. 1, McCants Dep. at 109; Ex. 4, Gallagher Dep. at 10; Ex. 12, Notes of May 22, 2002 meeting).

574, 586-87 (1986).  The mere existence of some evidence in support of the non-moving party is insufficient to overcome a motion for summary judgment – there must be enough evidence to enable a jury to find in the non-moving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-50 (1986).

In discrimination cases, a defendant must prevail on summary judgment if:  (1) it can show that the plaintiff is unable to establish a *prima facie* case of discrimination, or (2) the plaintiff has established a *prima facie* case but cannot produce sufficient evidence to rebut an assertion of a non-pretextual reason for the adverse employment action.  <u>Stafford v. Noramco of Delaware, Inc.</u>, No. CIV. 97-376-GMS, 2000 WL 1868179, *1 (D. Del. Dec. 15, 2000). Applying these standards, Wawa is entitled to summary judgment on each of plaintiff's claims.

**B.**     <u>**McCants' Failure To Promote Claim Fails As A Matter Of Law.**</u>

1.     <u>McCants' Own Admissions Are Fatal To His Claim.</u>

McCants alleges that he was discriminated against on the basis of race when he was not selected to manage gas stores 840 or 841.  However, McCants' admissions at his deposition highlight that he has no evidence, other than his personal opinion, to support his failure to promote claim.  Indeed, McCants made the following key admissions:

> Q:  Did you think you didn't get the gas store manager job because of your race?
>
> A:  **Yes.**
>
> Q.:  What is the basis for that belief?
>
> A:  **My belief at the time, to my knowledge, there were no black gas store managers or any black employees in the corporate office in upper management.**
>
> Q:  Anything else?
>
> A:  **No.**

* * *

Q: You don't have knowledge as to whether there were black gas store managers outside your area, correct?

A: **Yes.**

\* \* \*

Q: ...How do you know [there wasn't a great showing of blacks in upper management]?

A: **Through hearsay.**

\* \* \*

Q: Do you know anything about George Shelton's work history at Wawa?

A: **No.**

\* \* \*

Q: Do you know anything about [the other applicants'] qualifications or work history with Wawa?

A: **No.**

\* \* \*

Q: Do you know if you were more qualified or less qualified or equally qualified than Chris Casey?

A: **I don't know Chris Casey's qualifications.**

\* \* \*

Q: You never managed a gas store on your own did you?

A: **No.**

Q. George Shelton had, or you don't know?

A. **Yes. He managed store 841.**

\* \* \*

Q. And Chris Casey had managed a gas store, too; isn't that correct?

A. **I believe so.**

Q. Isn't it true you don't know how the other applicants did in their interviews for 840. . .

A. . . . **I don't know [how they did].**

\* \* \*

Q. So you don't know the basis for Wawa's decision in choosing other candidates over you to manage the gas stores at issue; isn't that true?

A. **I would like to believe it was based on credentials.**

Q. And you don't know which credentials Wawa valued over others; correct?

A. **No.**

(Ex. 1, McCants Dep. at 49-52, 55-57, 87, 102-04.)

These admissions by McCants underscore the legal insufficiency of his failure to promote claim.

  2. <u>McCants' Failure To Promote Claim Should Be Dismissed Because He Cannot State A *Prima Facie* Case.</u>

To state a successful discrimination claim in the context of failing to receive a promotion, McCants must first be able to state *prima facie* case of discrimination. To set forth a *prima facie* case of race discrimination for a failure to promote claim, McCants must show (1) he is a member of a protected class; (2) he applied for and was qualified for the position; and (3) he was rejected "under circumstances that give rise to an inference of unlawful discrimination." <u>Hayes v. Daisy Const. Corp.</u>, No. Civ. A. 02-066-GMS, 2004 WL 2283597, at \*4 (D. Del. Sept. 28, 2004). The burden then shifts to Wawa to articulate a legitimate non-discriminatory reason for its employment decision. <u>Stafford</u>, 2000 WL 1868179, at \*3. McCants must then demonstrate that the articulated reason is pretext for discrimination by showing that it is false or demonstrating "such weaknesses, implausibilities, incoherencies, or contradictions" in Wawa's

-14-

proffered legitimate reasons for its action "that a reasonable factfinder could find them unworthy of credence." Id. (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1995)).

McCants cannot satisfy the requirements of a *prima facie* case because there is no evidence that race had anything to do with Wawa's decision to promote Shelton and Casey to stores 840 and 841. The only evidence of discrimination that McCants sets forth is his "belief" that there were no other black gas store managers in Delaware (he did not know the racial makeup of gas store managers outside Delaware), and that there was not a strong showing of black employees in upper management, which he admitted he "knew" only through hearsay. (Ex. 1, McCants Dep. at 49-51.) This evidence is unsubstantiated and entirely irrelevant.[5]

3.    McCants' Failure To Promote Claim Should Be Dismissed Because He Has No Evidence To Rebut Wawa's Reasons For Not Selecting Him.

Even assuming that McCants' evidence could establish a *prima facie* case of discrimination, McCants has no evidence to rebut Wawa's legitimate non-discriminatory reason for selecting Shelton and Casey to run stores 840 and 841. It is undisputed that Shelton and Casey were far more experienced than McCants in that they had previous experience managing high-volume gas stores at a successful level. (Ex. 2, Poplawski Dep. at 24-25, 28, 41-43.) McCants admitted that he did not know what the other candidates' qualifications were, and did not know which qualifications Wawa valued over others in filling the positions. (Ex. 1, McCants Dep. at 49-52, 55-57, 87, 104.) Moreover, McCants' reliance on the fact that he had been an assistant manager at store 840 is misplaced because Shelton and Casey had experience as gas store managers, and it is undisputed that managers have more responsibility for store operations

---

[5] McCants also mentioned that he was not interviewed for store 841. (Ex. 1, McCants Dep. at 84-85.) However, Poplawski testified that no one was interviewed or re-interviewed for store 841 – he considered the applicants for store 840 in addition to Chris Casey whom he felt was qualified for the position. (Ex. 2, Poplawski Dep. at 20-21, 40-42, 43.) Moreover, despite McCants' assertion that he was not interviewed for 840, he admitted that he had no knowledge as to whether anyone else was interviewed. (Ex. 1, McCants Dep. at 84-85, 87.)

than assistant managers. (Ex. 1, McCants Dep. at 89; Ex. 2, Poplawski Dep. at 25.) Because

McCants has no admissible, relevant evidence to rebut Wawa's legitimate non-discriminatory

reasons for selecting Shelton and Casey over him, there is nothing for a jury even to consider.

McCants' failure to promote claim therefore fails as a matter of law on the undisputed facts.

## C. <u>McCants' Claims of Race and Religious Discrimination In Connection With His Demotion Fail As A Matter Of Law.</u>

Just like failure to promote claims, discrimination claims are analyzed under the

three-step burden-shifting framework set forth above. A plaintiff must first establish a *prima*

*facie* case of discrimination by showing that (1) he was a member of a protected class; (2) he was

qualified for the position; (3) he suffered an adverse employment action despite being qualified;

and (4) the action occurred under circumstances giving rise to an inference of unlawful

discrimination, such as when non-members of the protected class are treated more favorably than

the plaintiff. <u>Waldron v. SL Indus., Inc.</u>, 56 F.3d 491, 494 (3d Cir. 1995). When the plaintiff

makes this showing, the burden shifts to the defendant to articulate one or more legitimate non-

discriminatory reasons for its employment decision. <u>Id.</u> The plaintiff must then prove that the

employer's stated reasons were pretextual or unworthy of credence. <u>Id.</u> at 495. If the plaintiff

cannot carry this burden, the defendant is entitled to summary judgment. <u>Stafford</u>, 2000 WL

1868179, at *1.

      1.     <u>McCants Cannot State A *Prima Facie* Case of Race or Religious Discrimination Because He Did Not Suffer An Adverse Employment Action.</u>

As discussed above, it is undisputed that McCants resigned after learning that he

was going to be demoted. Consequently, he cannot prove that he suffered an adverse

employment action (and satisfy the second prong of his *prima facie* case) unless he can show that

he was constructively discharged. As a matter of law, merely being demoted does not constitute

a constructive discharge. <u>Audenreid v. Circuit City Stores</u>, 97 F. Supp.2d 660, 664 (E.D. Pa. 2000). A plaintiff has the additional burden to show that "the working conditions. . . were so intolerable that a reasonable person in the plaintiff's position would have felt compelled to resign." *See* <u>id.</u>

After Wawa learned that McCants was not working the requisite number of hours, and after he failed to improve morale in his store, it could have terminated him. Instead, Wawa provided McCants the opportunity to work as an assistant manager or explore other corporate opportunities at Wawa. McCants chose to resign without returning to work. On these undisputed facts, McCants cannot prove constructive discharge as a matter of law.

Two cases illustrate this very point. In <u>Cuffee v. The Dover Wipes Co.</u>, 334 F. Supp.2d 565 (D. Del. 2004), this Court held that the plaintiff, who was involuntarily transferred to another position with fewer responsibilities, failed to prove constructive discharge based solely on the transfer. Recognizing the objective standard in Third Circuit constructive discharge cases, which is that "the employment conditions be so abhorrent that a reasonable person would have felt 'compelled' to terminate the employment," the Court held that plaintiff's evidence of emotional distress after resigning following one day of work in the new position was insufficient to meet this Circuit's standard. <u>Id.</u> at 578. The Court also confirmed that a "stressful" work situation is insufficiently abhorrent to constitute constructive discharge. *See* <u>Duffy v. Paper Magic Group, Inc.</u>, 265 F.3d 163, 169 (3d Cir. 2001). Furthermore, the fact that the plaintiff in <u>Cuffee</u> suffered from severe emotional distress was not objective evidence sufficient to meet the Third Circuit's constructive discharge standard. <u>Cuffee</u>, 334 F. Supp.2d at 578. Finally, the Court held that plaintiff could have explored alternatives before concluding that the only option to rectify his situation was to resign. <u>Id.</u>

Likewise, in <u>Audenreid</u>, the court found that the plaintiff, who was involuntarily transferred to manage a smaller store, could not prove that he was constructively discharged. Audenreid, who was the Operations Manager of the Allentown, Pennsylvania Circuit City store, discounted a refrigerator for a friend in violation of company policy. <u>Id.</u> at 661. Instead of terminating Audenreid, Circuit City transferred him to the Operations Manager position in the Montgomeryville store in the hope that he would develop further as a manager. <u>Id.</u> Audenreid perceived the transfer as a demotion because it was a smaller store. <u>Id.</u> at 663. Even assuming the transfer was a demotion, the court held that there were insufficient grounds to find constructive discharge on that basis because there was no evidence of intolerable working conditions at the Montgomeryville store such that a reasonable person would have felt compelled to resign. <u>Id.</u> at 664.

Just like the plaintiffs in <u>Cuffee</u> and <u>Audenreid</u>, McCants was offered another job. It is also documented that he discussed exploring additional opportunities within Wawa with Gallagher on at least two occasions. (*See* Ex. 7, Gallagher's Agenda of March 18, 2002 Meeting with McCants; Ex. 12, Notes of May 22, 2002 Meeting.) McCants admitted that the decision of whether to work in a different store as an assistant manager was up to him, and that he told Gallagher and Stief that he would think it over. (Ex. 1, McCants Dep. at 76.) McCants has no evidence that the working conditions at his new location were so intolerable that he had no choice but to resign. Rather, the evidence shows that McCants resigned without returning to work a single day. McCants' only complaint about store 801 (which was the store he believed he would be transferred to) was that he had heard through others that compared to 811, it was a lower-volume store. (Ex. 1, McCants Dep. at 72.) However, he has no admissible evidence that

801 was a lower-volume store than 811. (Ex. 1, McCants Dep. at 72-73.) On these facts, McCants cannot prove that he was constructively discharged.[6]

2.      <u>There Is No Evidence That Wawa Demoted McCants Because Of His Race.</u>

McCants' claim that he was demoted because of race additionally fails because McCants has presented no evidence that shows that Wawa's reasons for deciding to demote him are pretextual. McCants' own testimony on this claim shows that he has no evidence of race discrimination independent of his alleged comment about diversity, which has bearing only on his retaliation claim, and is not relevant to his claim of disparate treatment on the basis of race. He testified as follows:

Q: Why do you think you were demoted?

A: **I don't know.**

Q: Do you think it was because of your race?

A: **I believe it was a continuance. It all started with not getting the gas store promotion and when I expressed by concern to Mr. Poplawski about lack of diversity, I think it was a continuum.**

\* \* \*

Q: You're saying that you believe your demotion was the direct result of your comment you made to Mr. Poplawski about a lack of diversity?

A: **Yes.**

Q: Anything else? Any other reason why you believe you were demoted?

A: **No.**

---

[6] To the extent McCants might claim that the decision to demote him was itself an adverse employment action, such a claim cannot withstand scrutiny because he resigned before the demotion took effect. *See* Ex. 4, Gallagher Dep. at 12. Therefore, he never suffered any adverse consequences from the decision to demote. Moreover, even if the demotion was an adverse action, there is still no evidence that it was discriminatory.

(Ex. 1, McCants Dep. at 81-82.)

Because McCants himself admits that he has no other evidence of race discrimination pertaining to his demotion, this claim should be dismissed.[7]

### 3. There Is No Evidence That Wawa Demoted McCants Because Of His Religion.

McCants, who is Christian, also contends that he was demoted, at least in part, because of his religion.[8]  He bases this claim entirely on Gallagher's alleged statement that McCants did not work on Sundays because he "did the church thing." (Ex. 1, McCants Dep. at 82-83; 105-07.)  Assuming Gallagher even made such a remark, it is legally insufficient evidence of discrimination on the basis of religion.

First, the comment was not inherently discriminatory and cannot constitute evidence of religious animus or discrimination.  "The most obvious and compelling example of such evidence in the context of a religious discrimination case would be a remark to the effect that . . . 'I'm firing you because you're not a Christian.'"  Venters v. City of Delphi, 123 F.3d 956, 972-73 (7th Cir. 1997) (finding inference of discrimination where supervisor told plaintiff that she needed to be "saved" and faced damnation, and that she had to play by "God's rules" and choose "God's way"); Johnson v. Spencer Press of Maine, Inc., 364 F.3d 368, 376 (1st Cir. 2004) (finding discrimination where supervisor made frequent targeted religious comments such as plaintiff "must be Catholic" because he did not feel comfortable talking about sex and that he

---

[7] McCants does not even have any admissible evidence that managers outside his protected class were treated more favorably.  He vaguely contends that white store managers with the "same" issues were not demoted, but admits that he has no first-hand knowledge of such treatment.  (Ex. 1, McCants Dep. at 227-32.)  However, "the burden ultimately rests with the plaintiff to prove that the employer discriminated against him."  Blackshear v. City of Wilmington, 15 F.Supp.2d 417, 423 (D. Del. 1998) (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

[8] There also is no evidence that Wawa failed to accommodate McCants on the basis of religion.  McCants never asked for an accommodation that he not work on Sundays, and he admitted that Wawa never required him to work on Sundays.  (Ex. 1, McCants Dep. at 106-07.)

was a "religious freak" who spewed "religious bullshit" that supervisor did not want to hear).

Gallagher's alleged single comment rises nowhere near the level required to sustain a religious

discrimination claim.

Second, the alleged comment was temporally remote and was unconnected to any

employment decision. Isolated remarks, unrelated to the disputed employment action, are

insufficient to demonstrate discriminatory intent. *See* Price Waterhouse v. Hopkins, 490 U.S.

228, 276 (1989) ("[S]tray remarks in the workplace. . . cannot justify requiring the employer to

prove that its [employment] decisions were based on legitimate criteria. Nor can statements by

nondecisionmakers, or statements by decisionmakers unrelated to the decisional process

itself[.]"); Marcus v. West, No. 99 C 0261, 2002 WL 1263999, at *11 (N.D. Ill. June 3, 2002)

(holding that isolated incidents where supervisor told plaintiff that people did not like her

"church lady act" and told her to "swear on a Bible" to resolve dispute with another employee

were insufficient to overcome summary judgment on religious discrimination claim). There is

no evidence that Wawa's actions with respect to McCants' employment had anything to do with

McCants' involvement in church. In fact, McCants admitted that Wawa looked favorably upon

community activities like church. (Ex. 1, McCants Dep. at 221.) For these reasons, McCants'

religious discrimination claim should be dismissed.

**D.  McCants' Retaliation Claim Fails As A Matter of Law On The Undisputed Facts.**

McCants' retaliation claim fails as matter of law on the undisputed facts because

he cannot establish even a *prima facie* case of retaliation. To prove that he was retaliated against

under Title VII, McCants must first state a *prima facie* case comprised of three elements: (1) he

was engaged in protected activity; (2) Wawa took adverse action against him; and (3) there is a

causal link between the adverse employment action and the protected activity.  <u>Cuffee</u>, 334 F. Supp.2d at 578.

      If plaintiff can establish a *prima facie* case, defendant must articulate a legitimate reason for the employment action, and then the burden shifts to the plaintiff to show both that the defendant's proffered reason is false <u>and</u> that retaliation was the determinative factor in the adverse employment action, a heightened standard when compared with Title VII's requirements.  *See* <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 501 (3d Cir. 1997).  In essence, the plaintiff must prove that "retaliatory animus played a role in the employer's decision making process and that it had a determinative effect on the outcome of that process."  <u>Shaner v. Synthes (USA)</u>, 204 F.3d 494, 501 n.8 (3d Cir. 2000) (*citing* <u>Krouse</u>, 126 F.3d at 501).  Simply showing that retaliation was a "motivating factor" is insufficient as a matter of law for the plaintiff to satisfy this burden.  <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 932 (3d Cir. 1997).  However, the Court need not even reach the question of whether McCants can meet this heightened standard (which he cannot) because on the undisputed facts, McCants is unable to establish a *prima facie* case of retaliation.[9]

    1.    <u>McCants Cannot Establish A *Prima Facie* Case of Retaliation.</u>

        a.    *McCants Did Not Engage in Protected Activity*

      McCants' retaliation claim is fundamentally flawed because he cannot satisfy the first prong of his *prima facie* case – he never engaged in protected activity.[10]  McCants rests his

---

[9] Wawa reserves the right to argue that McCants' retaliation claim also fails because McCants cannot show that defendant's reason for demoting him was false and that retaliation was the determinative factor in the decision.

[10] "Protected activity" is defined under Title VII as an instance where an employee has "opposed any practice made an unlawful employment practice by this subchapter or. . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

entire retaliation claim on his comment(s) to his supervisors that Wawa generally "lacked diversity." This comment, as a matter of law, is simply not "protected activity." *See* Barber v. CSX Dist. Services, 68 F.3d 694, 702 (3d Cir. 1995) (finding that plaintiff's letter to human resources complaining about unfair treatment in general, and expressing dissatisfaction that someone else was awarded the job he wanted, was too vague to support a retaliation claim); Sosky v. Int'l Mill Service, Inc., CIV. A. No. 94-2833, 1996 WL 32139, *10 (E.D. Pa. Jan. 25, 1996) (holding that complaint of unfair treatment about supervisor to human resources department is not protected activity under law).

The recent Cuffee case shows that McCants' retaliation claim cannot withstand summary judgment for this very reason. Just like McCants, the plaintiff in Cuffee failed to assert proof of any protected activity – he complained about unfair practices in the form of being denied a raise, but he never complained that he did not receive a raise because of discrimination. 334 F. Supp.2d at 575. Accordingly, the Court held: "Absent any express complaint about discriminatory activity by defendants, plaintiff's statement to his manager . . . cannot be considered a protected activity." Id. Like the plaintiff in Cuffee, McCants never complained about being the victim of discrimination to anyone at Wawa. (Ex. 1, McCants Dep. at 218-21.) His general question as to why Wawa "lacked diversity" is simply not protected activity under Title VII.

Rather, the law is clear that protected activity means formal charges or more informal complaints about discrimination relating to one or more specific employment practices. Id.; *see* Byerly v. Ithaca College, 290 F. Supp.2d 301, 309 (N.D.N.Y. 2003) (holding that professor did not state a retaliation claim where claimed protected activity was advocating for more racial diversity in the workplace); *see also* Manoharan v. Columbia Univ. Coll. of

<u>Physicians & Surgeons</u>, 842 F.2d 590, 594 (2d Cir. 1988) (finding that appellant's complaint that Columbia was not pursuing affirmative action goals in the selection process for a new administrative services position when it selected a white candidate from a pool of applicants that included blacks was not activity protected by Title VII in the context of a retaliation claim); <u>Dupont-Lauren v. Schneider (USA), Inc.</u>, 994 F. Supp. 802, 822-23 (S.D. Tex. 1998) (holding that statement that "it was hard being female in the company" was vague and failed to apprise employer of any particular practices plaintiff felt were discriminatory).

      Indeed, McCants' own testimony belies his claim that he engaged in protected activity. McCants specifically testified that his comment about diversity <u>did</u> <u>not</u> pertain to his failure to get the gas store promotion, or any other specific employment practice:

> Q: Did you tell Mr. Poplawski that the reason you didn't get the job was because you were black?
>
> A: **No.**
>
> Q: Did you tell Mr. Poplawski that there were no opportunities for minority employees at Wawa?
>
> A: **No.**
>
> Q: So your testimony is that you just said to him that there wasn't diversity?
>
> A: **My question to him was – to Mr. Poplawski was about diversity, and he said Wawa doesn't do a good job on diversity.**
>
> Q: Did he say anything else?
>
> A: **No.**
>
> Q: That was it? That was all he said to you?
>
> A: **That's all I remember.**

* * *

Q: In an effort to achieve diversity, do you think you should have gotten the job? By you getting that gas store manager job, in your opinion, does that make Wawa more diverse?

A: **No.**

Q: What do you mean by diversity then? What did you mean by your comment to Mr. Poplawski? Just that there weren't any other gas store managers who were black at the time?

A: **Yes. And black managers and upper management outside of the stores.**

(Ex. 1, McCants Dep. at 46-48.)

McCants' ambiguous remark about diversity at Wawa was not (even by his own admission) a discrimination complaint, and cannot, as a matter of law, constitute protected activity sufficient to state a claim of retaliation. Wawa is therefore entitled to summary judgment on McCants' retaliation claim.

> b.    *Wawa Did Not Take Adverse Action Against McCants*

Second, McCants cannot set forth a *prima facie* case of retaliation because, as explained *supra*, he cannot prove that Wawa took adverse action against him. Because a demotion does not constitute a constructive discharge *per se*, McCants must prove that conditions in his new job were so abhorrent that he was forced to quit. This he cannot do. Consequently, there is no evidence that he was constructively discharged and his retaliation claim fails as a matter of law on the undisputed facts.

> c.    *There Is No Causal Connection Between Any Alleged Protected Activity and McCants' Demotion*

Finally, McCants cannot establish a *prima facie* case because he cannot show the existence of a causal connection between the alleged protected activity and his demotion. Even if the Court should find that McCants did engage in protected activity, there is no evidence that the decision to demote McCants had anything to do with McCants' passing reference to

-25-

diversity. The mere fact that McCants was demoted approximately six months after making the alleged diversity comment is not, in and of itself, sufficient to establish a causal connection. *See* Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 199 n.10 (3d Cir. 1996); Quiroga v. Hasbro, Inc., 934 F.2d 497, 501 (3d Cir. 1991). "A causal relationship . . . requires more than mere coincidence. Causation requires that the employer's action be the consequence of protected activities and nothing else." Momah v. Albert Einstein Medical Ctr., 978 F. Supp. 621, 632 (E.D. Pa. 1997). As the Third Circuit stated in Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997), "the mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." *See also* Krouse, 126 F.3d at 503 (holding that timing of alleged retaliatory employment action alone cannot support a finding of causal link when retaliatory action does not occur almost immediately following the protected activity).[11]

In Krouse, the court held that while timing alone was insufficient to establish a causal link, if the timing was "unusually suggestive" of a retaliatory motive, a causal link may be inferred. 126 F.3d at 503. In other words, to establish the required link in a situation where the time period between events spans a period of months, a plaintiff must have some other evidence of discrimination, such as a pattern of antagonism in the intervening period, in addition to temporal proximity. *Accord* Johnson v. E.I. Du Pont Nemours & Co., 60 F. Supp.2d 289, 296-97

---

[11] In Jalil v. Avdel Corp., 873 F.2d 701 (3d Cir. 1989), the court held that the plaintiff satisfied the causation prong of the *prima facie* case by showing temporal proximity between the plaintiff's charge and his termination. Id. at 708. This decision, however, has consistently been limited by subsequent Third Circuit opinions. In Krouse, for instance, the court stated that the holding in Jalil was limited to its "unusually suggestive" facts where the employer discharged the plaintiff a mere two days after learning about his EEOC charge. 126 F.3d at 503. *See also* Robinson, 120 F.3d at 1302 ("[I]f Jalil is to be interpreted as holding that timing alone can be sufficient, that holding must be confined to the unusually suggestive facts of Jalil."); *E.g.*, Johnson v. Souderton Area School Dist., CIV. A. No. 95-7171, 1997 WL 164264, at *8 (E.D. Pa. 1997) (holding that span of five months between protected activity and adverse employment action was too attenuated to establish causal link); Nixon v. Runyon, 856 F. Supp. 977, 988 (E.D. Pa. 1994) (holding span of four months was insufficient to create causal link).

(D. Del. 1999). Here, McCants cannot establish a *prima facie* case of retaliation because other than timing, there is absolutely <u>no</u> evidence of a causal connection to support his position that he was demoted for his diversity comment. The record is simply devoid of any substantiated retaliatory or antagonistic conduct by Wawa toward McCants from the time he allegedly made the comment to Poplawski (or even Gallagher) after not getting the promotion he wanted in late 2001 until his demotion at the end of May 2002.

Further, it is undisputed that Poplawski had nothing to do with the decision to demote McCants in May 2002. It strains logic to conclude that the decision to demote McCants was in retaliation for his alleged diversity comment to Poplawski. Even assuming that McCants made a diversity comment to Gallagher, nothing in the record suggests a link between that alleged comment and Gallagher's decision to demote McCants. To the contrary, the record reveals substantial evidence of the performance issues that motivated Gallagher's decision: minutes of meetings between Gallagher and McCants, statements from store associates summarizing their complaints to Gallagher and e-mails from Gallagher and Skocik to McCants (<u>See</u> Exs. 5, 7-12). On these undisputed facts, McCants' attempt to manufacture a retaliation claim fails as a matter of law.

## V.     CONCLUSION

For all of the foregoing reasons, Wawa respectfully requests that the Court grant

summary judgment in its favor on all of McCants' claims.

Dated:  March 30, 2005                         Respectfully submitted,


_____
Sean McDevitt (DSB#2894)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
(302) 777-6500

Susan K. Lessack
Stephanie A. Bilenker
PEPPER HAMILTON LLP
400 Berwyn Park
899 Cassatt Road
Berwyn, PA  19312-1183
(610) 640-7800

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JEFFREY MCCANTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-257 (KAJ) |
| | ) | |
| WAWA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I caused two copies of defendant's Motion for Summary

Judgment and accompanying Memorandum of Law plus exhibits to be served upon the following

counsel on the date set forth below, via federal express:

> Gary W. Aber, Esq.
> Aber, Goldlust, Baker & Over
> 702 King Street, Suite 600
> P.O. Box 1675
> Wilmington, DE 19899
> Attorneys for Plaintiff

Dated: March 30, 2005

_____
Sean McDevitt (DSB#2894)
Pepper Hamilton LLP
1313 Market Street, Suite 1600
P.O. Box 1709
Wilmington, DE  19899-1709
(302) 777-6500

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JEFFREY MCCANTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-257 (KAJ) |
| | ) | |
| WAWA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## EXHIBITS IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

| Exhibit | Description |
|---|---|
| 1 | Deposition of Jeffrey McCants, November 1, 2004 |
| 2 | Deposition of John Poplawski, December 14, 2004 |
| 3 | Matrix of Store 840 Interview Process |
| 4 | Deposition of Joseph Gallagher, November 23, 2004 |
| 5 | Written Warning Provided to McCants on Compliance to Required Schedule |
| 6 | McCants' Time Cards from April-May 2002 |
| 7 | Gallagher's Agenda of March 18, 2002 Meeting with McCants |
| 8 | April 15, 2002 E-mail from Gallagher to McCants |
| 9 | April 17, 2002 E-mail from Gail Skocik to Gallagher |
| 10 | April 24, 2002 E-mail from Gail Skocik to McCants |
| 11 | Written Complaints about McCants from Store 811 Associates |
| 12 | Gallagher's Notes of May 22, 2002 Meeting with McCants |
| 13 | Cited Unreported Opinions |