## Westlaw.

Not Reported in F.Supp.
1996 WL 32139 (E.D.Pa.)
(Cite as: 1996 WL 32139 (E.D.Pa.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Francis SOSKY, Plaintiff,
v.
INTERNATIONAL MILL SERVICE, INC. and
William Maloney, Defendants.
**No. CIV. A. 94-2833.**

Jan. 25, 1996.

MEMORANDUM

REED, J.

**\*1** Plaintiff Francis Sosky brings this age discrimination in employment action against defendants International Mill Service, Inc. ("IMS") and William Maloney alleging that defendants discriminated against him on account of his age in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons.Stat. Ann. §§ 951-963, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. Specifically, plaintiff asserts that defendants terminated him because of his age, exposed him to a hostile work environment because of his age, and retaliated against him for complaining about the age discriminatory treatment he was allegedly experiencing. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

Currently before the Court is the motion by defendants for summary judgment. (Document No. 16) For the following reasons, the motion will be granted.

### I.FACTUAL BACKGROUND

The following facts are based on the evidence of record viewed in the light most favorable to plaintiff as the nonmoving party, as required when considering a motion for summary judgment. *See Sempier v. Johnson & Higgins,* 45 F.3d 724, 727 (3d Cir.), *cert. denied,* 115 S.Ct. 2611 (1995).

Sosky began his association with IMS when he joined Codesco, an IMS affiliate, in 1974 as an Inventory Manager. He eventually became a General Accounting Manager at Codesco, and then in 1979 joined IMS proper as the Account Manager for North America. Over the next decade Sosky continued to work for IMS and received various promotions, eventually becoming Director, Treasury Services. During this time period he generally received excellent performance evaluations, although he was demoted once in 1985.

In February 1992 defendant William Maloney joined IMS as Vice President of Finance, which made him the direct supervisor of Sosky. The first indication in the record of the coming problems between Maloney and Sosky occurred in August of 1992. On August 3, 1992, Maloney met with Sosky to discuss a memorandum Maloney was going to issue concerning a reorganization of the Finance Department. In the course of this discussion, Maloney commented that "it's time to give the young a chance" because "the company needs to get some enthusiasm and drive," and that Sosky should be able to help some newly promoted employees as he had "been around for a bunch of years." Sosky Dep. at 73-75, 80. In a memorandum Sosky wrote at the time about this conversation, Sosky relates that Maloney attempted to retract his "young" statement several times later in the conversation. Memorandum from Sosky to files of 8/3/92. [FN1] In addition, although Sosky's title was changed to Director, Management Accounting and he was given a salary grade increase, his actual salary was not increased, unlike the salaries of three other, younger persons who were promoted at the same time. Sosky did, however, initially view the new position as a good opportunity for himself.

    FN1. Defendants have challenged the admissibility of various handwritten

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**A-100**

Not Reported in F.Supp.
1996 WL 32139 (E.D.Pa.)
(Cite as: 1996 WL 32139 (E.D.Pa.))

Page 2

memoranda written by plaintiff. For the reasons discussed below, this Court concludes that summary judgment should be granted for defendants even assuming that these memoranda could be properly considered. This Court therefore declines to resolve this evidentiary question.

**\*2** Over the next several months there were various exchanges between Maloney and Sosky which Maloney considered merely joking but Sosky considered embarrassing and humiliating. These included Maloney telling a representative of the parent company for IMS on August 10, 1992 that Sosky needed 45 minutes warning before a meeting because he might be "out jogging or changing his oil," Maloney telling Sosky on August 11, 1992 "who gives a fuck" in relation to a work-related matter, Maloney commenting to Sosky on August 14, 1992 in the presence of some of Sosky's subordinates "how many birthdays do you have?" after Sosky had requested days off for the birthdays of two family members and himself, and Maloney telling Sosky on August 28, 1992 that he should not talk to people in the halls. Sosky Dep. at 95-96, 99, 102-03, 110. In addition, on October 28, 1992 Maloney yelled at Sosky "Wake up, Frank!" during a luncheon even though Sosky was not dozing off, and, after receiving a request from Sosky to take end of year vacation days, Maloney wrote on the request "are you going into semi retirement?" Sosky Dep. at 126; memorandum from Sosky to Maloney of 11/3/92. During the same time period Maloney also commented about another employee that she "has been here a zillion years and can't change her work style." Sosky Dep. at 86.

Also beginning in August of 1992, Maloney started communicating to Sosky his concerns over various alleged performance problems. In August 5, 1992, after commenting that Sosky should know better because he had been around IMS either for "quite a few years" or "for a number of years," Maloney told Sosky that he was going to "kick your ass." Sosky Dep. at 81, 86. Then in a memorandum dated September 11, 1992 Maloney indicated that he was not satisfied with Sosky's performance in certain respects, including having open areas in connection with the McGraw project, failing to make progress with the "Green Book" for the management group, " *gross* " shortcomings in the drafts of policies for

which Sosky was responsible, and a need to gain better understanding of the department's goal with regard to IMS response procedure. Maloney also transferred insurance management duties away from Sosky to Paul Bochnak, then age 41, in August of 1992, and had younger subordinates of Sosky attend management meetings from which Sosky was excluded.

Concerned about his repeated problems with Maloney, Sosky talked with Ken McArthur and Rosemary McHenry, both part of the IMS Human Relations Department, in October of 1992. While Sosky complained to McArthur and McHenry of the unfair treatment that he asserted he was receiving at the hands of Maloney, Sosky did not suggest that this treatment was the result of age discrimination. McArthur communicated to Maloney the fact that Sosky had complained to him, and Maloney subsequently criticized Sosky for taking their alleged problems to the Human Relations Department.

In January of 1993 one of Sosky's subordinates, Sandy Farkosh, resigned, leaving an important gap in the staff of the Finance Department. Maloney asked Sosky if he could fill that gap for several months; although there is a dispute about the exact exchange that occurred, Sosky acknowledges that he told Maloney that he could not cover the responsibilities of Farkosh's position while also covering his own. Maloney then made a further reorganization of the Finance Department which resulted in Sosky's position being eliminated. At the time that he made this reorganization, Maloney prepared a memorandum detailing his various criticisms of Sosky's performance. This memorandum concluded:

**\*3** When Sandy Farkosh resigned I decided that due to the critical nature of the analysis group I would like the analysts to report directly to me.
In addition, I have serious concerns about the accounts payable and billing area. Under Frank [Sosky] I have been unable to get close to the underlying issues and staff.
In view of Frank's problems and my concern about the critical areas mentioned above I have decided to terminate Frank and eliminate his position.
Memorandum from Maloney to file of 1/22/93, at 3-4. When his position was eliminated, Sosky was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**A-101**

Not Reported in F.Supp.
1996 WL 32139 (E.D.Pa.)
(Cite as: 1996 WL 32139 (E.D.Pa.))

Page 3

51 years old.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 56(c), "[s]ummary judgment is appropriate only when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law." *Sempier*, 45 F.3d at 727. For a dispute to be "genuine," the evidence must be such that a reasonable factfinder could return a verdict for the nonmoving party, and for a fact to be "material" it must be one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When, as here, "the moving party ... does not bear the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the non-moving party's ... evidence is insufficient to carry its burden of persuasion at trial." *Sempier*, 45 F.3d at 727. The nonmoving party must produce evidence to support its position, and may not rest on conclusory allegations or bare assertions alone. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). As the PHRA utilizes the same analytical framework as the ADEA, plaintiff's federal and state claims will be discussed together. *See Pennsylvania State Police v. Pennsylvania Human Relations Comm'n*, 542 A.2d 595, 599 (Pa.Commw.Ct.1988) (noting that Pennsylvania courts have adopted the federal *McDonnell Douglas* analytical model for use in employment discrimination claims made pursuant to the PHRA); *Chmill v. City of Pittsburgh*, 412 A.2d 860, 871 (Pa.1980) (stating that the PHRA, while an independent state statute, should be construed in light of principles of fair employment law which have emerged from federal anti-discrimination statutes).

### A. *Termination*

A plaintiff can sustain an age discrimination claim by either presenting direct evidence of discrimination or by using circumstantial evidence that meets the requirements given in the *McDonnell Douglas* line of cases. *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095-96 n. 4 (3d Cir.1995). Plaintiff here argues that he has presented direct evidence of age discrimination in

connection with his termination. Defendants respond that plaintiff has failed to produce direct or circumstantial evidence that would allow a reasonable factfinder to conclude that defendants discriminated against plaintiff because of his age when they decided to eliminate his position.

### 1. Direct Evidence

\*4 A direct evidence or "mixed motives" case of employment discrimination exists when "the evidence the plaintiff produces is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case [as is necessary in a circumstantial evidence case] to shift the burden of production." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir.1994); *accord Starceski*, 54 F.3d at 1096 (quoting this passage with approval). Justice O'Connor has provided further guidance on the type of evidence needed to make out a direct evidence case:

[S]tray remarks in the workplace, while perhaps probative of [a discriminatory animus], cannot justify requiring the employer to prove that its [employment] decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard.... What is required is ... direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision.

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) (citation omitted); *accord Starceski*, 54 F.3d at 1096 (quoting this passage with approval).

To support his argument that he has presented direct evidence of age discrimination, plaintiff points to the various allegedly agist comments by Maloney, including the "young should be given a chance" comment, the "enthusiasm and drive" comment, the "years" comments, the "birthdays" comment, the "Wake up, Frank!" comment, the "semi-retirement" comment, and the "zillions of years" comment. *See* Sosky Dep. at 73-75, 80, 81, 86, 88, 102-03, 126; memoranda from Sosky to files of 8/3/92, 8/5/92, 8/17/92, 10/28/92; memorandum from Sosky to Maloney of 11/3/92. In addition, plaintiff argues that the other negative

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**A-102**

Not Reported in F.Supp.
1996 WL 32139 (E.D.Pa.)
(Cite as: 1996 WL 32139 (E.D.Pa.))

comments made by Maloney and described in the factual background section above, while not related to age on their face, were the result of an intent to discriminate on the basis of age. *See* Sosky Dep. at 95 ("45 minutes" comment), 99 ("Who gives a fuck?" comment), 110 (talking in hall comment); memoranda from Sosky to files of 8/10/92, 8/11/92, 8/28/92 (discussing these three comments). Finally, plaintiff points to the fact that in 1990, a document relating to evaluations stated that the president of IMS, Tom Cochran, was interested in knowing the age of employees, and the fact that in 1991 an evaluation form was created which included a space for the evaluated employee's date of birth. *See* Sosky Dep. at 41-42; appendix to response by plaintiff to motion for summary judgment ("appendix of plaintiff"), Exhibits 4, 39.

This Court concludes that this evidence does not constitute direct evidence that plaintiff was terminated as the result of age discrimination. First, the comments that do not relate to age on their face cannot by their very nature constitute direct evidence of age discrimination. And second, Maloney's comments which could possibly be construed as agist were made months before plaintiff was terminated [FN2] and, at most, reflect Maloney's knowledge of plaintiff's age and years of experience with IMS and so are insufficient to constitute direct evidence of age discrimination. *See, e.g., Armbruster*, 32 F.3d at 780-81 (notations of ages of employees did not constitute direct evidence of age discrimination); *Virapen v. Eli Lilly, S.A.*, 793 F.Supp. 36, 39 (D. Puerto Rico 1992) (statement that plaintiff oldest of three employees at a meeting not probative, by itself, of age discrimination), *aff'd without op.*, 66 F.3d 307 (1st Cir.1995). More importantly, plaintiff has failed to demonstrate how these comments, the 1990 document, or the 1991 evaluation form were so strongly linked to the decision to eliminate his position that they could constitute direct evidence that discriminatory animus lay behind the decision to terminate plaintiff. As a result, this Court concludes that plaintiff has failed to produce direct evidence of age discrimination in connection with his termination.

> FN2. Plaintiff asserts in his various briefs that the decision to eliminate his position was made months prior to January 1993,

possibly as early as August 1992. Plaintiff points to no evidence to support this assertion, and the uncontradicted evidence is that the unexpected resignation of Farkosh was the catalyst for the January 1993 reorganization that resulted in plaintiff's position being eliminated. *See* Maloney Dep. at 100, 244; memorandum from Maloney to file of 1/22/93. As a result, this Court concludes that the uncontradicted evidence demonstrates that the decision to eliminate plaintiff's position was not made before January 1993. Plaintiff also argues that the January 1993 reorganization was somehow linked to the August 1992 reorganization, but again fails to point to any evidence to support this position.

## 2. Circumstantial Evidence

**\*5** Absent direct evidence of discrimination, a plaintiff may still prevail on her claim by following the circumstantial evidence path laid down by *McDonnell Douglas Corp.* and its progeny. *See St. Mary's Honor Ctr. v. Hicks*, 113 S.Ct. 2742 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973); *Starceski*, 54 F.3d at 1095-96 n. 4. Under this line of cases, a plaintiff must first establish a prima facie case of unlawful discrimination. By establishing a prima facie case, a plaintiff eliminates the most common nondiscriminatory reasons for the adverse employment action and creates a presumption of discrimination. *Burdine*, 450 U.S. at 253-54. Once a prima facie case has been established, the defendant must produce some evidence that supports " 'a legitimate, nondiscriminatory reason' " for the employer's action. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994) (quoting *McDonnell Douglas*, 411 U.S. at 802). If this evidence is produced, the plaintiff may survive a motion for summary judgment only if she or he points to "some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764; *accord Waldron v. SL Indus., Inc.*, 56 F.3d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-103

Not Reported in F.Supp.
1996 WL 32139 (E.D.Pa.)
**(Cite as: 1996 WL 32139 (E.D.Pa.))**

491, 495 (3d Cir.1995). [FN3]

> FN3. Defendants argue that *Waldron* and, implicitly, *Fuentes,* were incorrectly decided. Specifically, defendants argue that a plaintiff must produce sufficient evidence at the summary judgment stage to prove both that the employer's proffered reason for his termination is false and that discrimination was the real reason for the termination. They base this argument on the Supreme Court's holding that a plaintiff must ultimately prove both of these elements at trial. *See St. Mary's Honor Ctr.,* 113 S.Ct. at 2749. Whatever merit there may be to this argument in the abstract, this Court is bound by decisions of the Court of Appeals for the Third Circuit, and both *Waldron* and *Fuentes* explicitly discussed and rejected the interpretation of *St. Mary's* that defendants now assert. *See Waldron,* 56 F.3d at 495; *Fuentes,* 32 F.3d at 764 ("[t]hus, if the plaintiff has pointed to evidence sufficiently [sic] to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case").

a. *Prima Facie Case*

The exact requirements for establishing a prima facie case depend on the factual circumstances of each case. *McDonnell Douglas,* 411 U.S. at 802 n. 13. In the context of a job elimination, a plaintiff may show a prima facie case by producing evidence that (1) she belongs to the protected class; (2) she was qualified for the position she occupied; (3) the position she occupied was eliminated; and (4) other, similarly situated workers were retained in the protected class and the duties of the plaintiff were subsumed by persons not in the protected class. *Torre v. Casio, Inc.,* 42 F.3d 825, 830-31 (3d Cir.1994). With regard to age discrimination claims, the fourth factor is met as long as the other workers that were retained and/or subsumed the plaintiff's duties were significantly younger than the plaintiff even if these other workers were also within the class protected by the ADEA, that is even

if these other workers were older than forty when the job elimination occurred. *See Barber v. CSX Distrib. Serv.,* 68 F.3d 694, 699 (3d Cir.1995) (holding that an age difference of as little as eight years is sufficient for the purposes of establishing a prima facie case of age discrimination, even if the younger person is within the class protected by the ADEA).

It is undisputed that plaintiff belonged to the class protected by the ADEA at the time of his termination, that plaintiff was qualified for his position, and that his position was eliminated. Defendants argue, however, that plaintiff has failed to produce evidence satisfying the fourth element of the prima facie case, as plaintiff has failed to demonstrate that other, similarly situated younger employees were retained when plaintiff's position was eliminated.

*6 A review of the evidence of record reveals that the position held by plaintiff was the only one eliminated in the January 1993 reorganization and that it is arguable that there were no other employees "similarly situated" to plaintiff as plaintiff held a unique position. *See* reply by defendants at 4; reply by defendants to sur reply by plaintiff at 1. This does not end our analysis, however, despite the arguments of defendants to the contrary. If a plaintiff is in a unique position which is eliminated, that plaintiff must still have some way of making out a prima facie case; otherwise, the ADEA could not reach an employer who eliminates a unique position because of the age of the employee holding that position. Mindful of the flexibility of the prima facie case elements, this Court concludes that an employee who occupies a unique position that is eliminated may meet the fourth element of a prima facie case by demonstrating that the remaining responsibilities of that position were transferred to persons significantly younger that the employee. *See Torre,* 42 F.3d at 830-31 (reformulating the fourth element of the prima facie case in light of the circumstances of that case); *Duvall v. Polymer Corp.,* Civ. A. No. 93-3801, 1995 WL 581910, at *6 (E.D.Pa. Oct. 2, 1995) (modifying prima facie case so that it could be satisfied if a plaintiff can show that her younger subordinates were retained and received some of her former duties). [FN4]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-104

Not Reported in F.Supp.
1996 WL 32139 (E.D.Pa.)
(Cite as: 1996 WL 32139 (E.D.Pa.))

Page 6

FN4. Defendants argue that this modification of the fourth element is incorrect as it would render the prima facie case the same for reduction in force and termination cases; in support of their position, defendants rely upon *Solt v. Alpo Petfoods, Inc.,* 837 F.Supp. 681, 685 (E.D.Pa.1993) (rejecting argument by plaintiff whose position was eliminated that she was effectively "replaced" by younger persons), *aff'd without op.,* 30 F.3d 1488 (3d Cir.1994). *Solt* is distinguishable from the instant case, as the plaintiff in *Solt* did not occupy a unique position and indeed it was uncontradicted in that case that several similarly situated, younger employees had their positions eliminated in the same reduction in force that affected plaintiff. *Id.* While defendants are correct that the analysis now adopted by this Court would merge the prima facie case elements for termination and reduction in force cases, this merger does not mean that the entire *McDonnell Douglas* analysis would be the same for termination and reduction in force cases. Specifically, unlike a plaintiff in a termination case a plaintiff who held a unique position that was eliminated cannot succeed at the pretext stage by attacking the qualifications of the persons who assumed whatever of the plaintiff's duties remained after the reduction in force. Instead, the latter plaintiff must attack the reason for the elimination itself or present other evidence of discrimination in order to prevail.

In the instant case, it is uncontradicted that the responsibilities of plaintiff that remained after his position was eliminated were all transferred to persons significantly younger than plaintiff, who was 51 in January 1993. *See* appendix of plaintiff, Exhibit 1 at 10 (listing the birth date for plaintiff as 8/7/41) The supervisory responsibilities of plaintiff and the responsibility of plaintiff to develop analytical capabilities were transferred to Maloney, who turned 42 in January 1993. Response of defendant to first set of interrogatories of plaintiff ("response to interrogatories"), no. 82; appendix of plaintiff, Exhibit 1 at 6 (listing the birth date for

Maloney as 1/2/51). And the customer assessment responsibilities of plaintiff were transferred to Credit Manager Renie Bralic, who was 38 in January 1993. Response to interrogatories, no. 82 (stating that these responsibilities were transferred to the Credit Manager); memorandum from Maloney to all employees of 1/25/93 (identifying Renie Bralic as the Credit Manager); appendix of plaintiff, Exhibit 1 at 1 (listing birth date for Bralic as 2/3/54). This Court concludes, therefore, that plaintiff has produced evidence sufficient to show that his responsibilities were assumed by persons significantly younger than himself and so has satisfied the remaining element of his prima facie case of age discrimination.

b. *Pretext*

Plaintiff does not dispute that defendants have met their burden of producing evidence of a legitimate, nondiscriminatory reason for the elimination of plaintiff's position. Specifically, defendants have produced evidence that the resignation Sandy Farkosh led Maloney to reorganize the Finance Department such that people that previously had reported to plaintiff would now report to Maloney, eliminating the need for the position held by plaintiff. *See* Maloney Dep. at 100, 244. In order to undermine this legitimate, nondiscriminatory reason, plaintiff must, at the summary judgment stage, "*either* (i) discredit [ ] the [employer's] proffered reasons, either circumstantially or directly, or (ii) adduc[e] evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes,* 32 F.2d at 764. In other words:

*7 In order to survive a summary judgment motion once the defendant has produced evidence of a legitimate, nondiscriminatory reason for an employment decision, a plaintiff who claims invidious discrimination but lacks overt evidence of discriminatory animus must point to evidence tending to show the defendant's explanation is pretextual since the inference arising from a *prima facie* case no longer exists.

*Armbruster,* 32 F.3d at 782.

Plaintiff does not dispute that his position was unnecessary given the reorganization of the Finance Department. Plaintiff argues, however, that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**A-105**

Not Reported in F.Supp.
1996 WL 32139 (E.D.Pa.)
(Cite as: 1996 WL 32139 (E.D.Pa.))

Page 7

reorganization itself was a cover for age discrimination. He argues that, reading the evidence in the light most favorable to him, the elimination of his position was actually based on his allegedly poor performance. And he further argues that there are genuine issues of material fact regarding whether his performance was indeed poor.

Plaintiff is partially correct. The evidence of record, viewed in the light most favorable to plaintiff, shows that his allegedly poor performance was an important part of the decision to reorganize the Finance Department so as to make his position unnecessary. *See* memorandum from Maloney to file of 1/22/93 ("[i]n view of Frank [Sosky]'s problems and my concern about the critical areas mentioned above I have decided to terminated Frank and eliminate his position"); Sosky Dep. at 72 (noting that McArthur told him that "performance made it easier to terminate your position"). And while it is true that the allegedly poor performance was only one of the factors that led to the January 1993 reorganization, the other factor being the resignation of Farkosh and the subsequent need to cover her responsibilities, this Court concludes that if plaintiff can "demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions" in the asserted criticisms of his performance such that "a reasonable factfinder *could* rationally find them unworthy of credence" then plaintiff has in turn undermined the stated reasons for the reorganization sufficiently to survive summary judgment. *Fuentes*, 32 F.3d at 765 (citation omitted). Unfortunately for plaintiff, however, a review of the evidence of record reveals that plaintiff has failed to meet this burden.

In the memorandum written at the time of the January 1993 reorganization, Maloney listed thirteen areas in which he considered plaintiff's performance to be poor. Memorandum from Maloney to file of 1/22/93. Many of the performance failures cited by Maloney are undisputed by plaintiff. *See* Sosky Dep. at 169-70 (plaintiff conceding that he did not perform or get involved to the extent he could or should have in the McGraw project); Sosky Dep. at 184 (plaintiff conceding that he never determined what financial reports could be eliminated); Sosky Aff. ¶¶ 4-5 (same); Sosky Dep. at 254, 256 (plaintiff

conceding that he was unable to determine for Maloney whether a new purchase order reporting receiving system would lead to staff reductions); Maloney Dep. at 96-98 (Maloney made substantial edits to the draft policy manual); Sosky Aff. ¶ 6 (without characterizing edits, noting that edits were made); appendix to response by plaintiff to motion for summary judgment ("appendix of plaintiff"), Exhibit 36 (draft policy manual with Maloney's extensive edits); Sosky Dep. at 253 (plaintiff contesting statement by Maloney that he made no efforts to remedy delays in audit reports, but not contesting that audit reports continued to be late despite his efforts); *see also* response by plaintiff to motion for summary judgment at 36-39 & Appendix A (challenging the various alleged performance failures, but failing to address Maloney's criticisms with regard to the Kress warranty issue and not contesting that plaintiff failed to continue to submit daily activity reports to Maloney). It is true that the evidence of record viewed in the light most favorable to plaintiff reveals that Maloney was mistaken with regard to some of his criticisms. *See* Sosky Dep. at 219-21, 223-24 (challenging Maloney's assertion that the FAS 106 project was technically difficult or inappropriate to assign to Flora Klein); Sosky Dep. at 173 (contrary to Maloney's assertion, plaintiff recalls Maloney taking personal responsibility for the Green Book graphs instead of assigning them to plaintiff); Hughes Dep. at 32 (same); Sosky Aff. ¶ 2 (stating that contrary to Maloney's assertion, plaintiff was never given responsibility for the Green Book executive summaries); Sosky Dep. at 250 (stating that Maloney told him that the ADP project should be dropped); Mclain Dep. at 11 (stating that ADP decided to drop the proposed project with IMS); Sosky Aff. ¶ 3 (stating that contrary to Maloney's assertion, he never told Maloney that a certain accounting task could not be done); Hughes Dep. at 61 (same); Sosky Dep. at 245 (stating that the Gary project did not initially involve paperflow reduction, contrary to Maloney's assertion); Sosky Aff. ¶ 7 (same); Bochnak Dep. at 57 (professing no memory of reviewing much less commenting negatively on a memorandum from Sosky regarding the Chaparral Lease, contrary to the assertion by Maloney). But Maloney's mistakes in some of these areas, as well as the disagreement by plaintiff with some of Maloney's subjective evaluations of his performance, are not enough to allow a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**A-106**

Not Reported in F.Supp.
1996 WL 32139 (E.D.Pa.)
(Cite as: 1996 WL 32139 (E.D.Pa.))

reasonable factfinder to infer that the stated reason for the elimination of plaintiff's position was a pretext for age discrimination. *See Fuentes,* 32 F.3d at 765 ("[t]o discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shred, prudent, or competent").

**\*8** In an attempt to shore up his attack of the legitimate reasons for the elimination of his position, plaintiff also points to his excellent performance evaluation history, the reference to age in a 1990 human resources document, the use of birth of date on the evaluation forms created in 1991, the poor performance of younger employees who still retained their positions, the lack of increase in his salary in the August 1992 reorganization, and the allegedly agist comments of Maloney. Having carefully reviewed the record, this Court concludes that to the degree that these allegations are supported in their record they do not, even when combined with the errors in Maloney's evaluation of plaintiff's performance, "demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions" in the stated reason for the elimination of plaintiff position such that "a reasonable factfinder *could* rationally find [it] unworthy of credence." *Fuentes,* 32 F.3d at 765 (citation omitted). The past performance evaluations of plaintiff are of little weight not only because plaintiff's supervisor changed in 1992 but also because his position and responsibilities changed significantly in August 1992. *See* Maloney Dep. at (describing August 1992 new position for plaintiff); memorandum from Maloney to all IMS employees of 8/3/92 (same); McArthur Dep. at 27 (stating that expectations for performance in Finance Department were raised by Maloney); *see also Billet v. CIGNA Corp.,* 940 F.2d 812, 826 (3d Cir.1991) ("prior good evaluations alone cannot establish that later, unsatisfactory evaluations are pretextual"). The references to age in the 1990 document cannot be connected to the 1993 termination decision as there is no evidence that Maloney, who joined IMS in 1992, ever saw this document. The date of birth blank also cannot be connected to the January 1993 decision, as it is undisputed that Maloney never

filled in the birth date blank on the evaluation forms he completed. *See* Maloney Dep. at 82-83. And while Maloney was certainly critical of other, younger employees without terminating them, plaintiff's situation is distinguishable from their situations as it is undisputed that his position was eliminated at least in part because of the shuffling of responsibilities in the wake of the resignation of his subordinate Farkosh; there is no evidence that a similar situation existed for the other, younger employees. *See* memorandum from Maloney to file of 1/22/93; Maloney Dep. at 110, 242. The lack of a salary increase in August 1992 remains unexplained, [FN5] but the other, younger employees who received salary increases in August 1992 were not in positions similar to plaintiff so there is little evidentiary value to this lack with regard to the claim by plaintiff of age discrimination in his termination five months later. And finally, this Court concludes that the various "agist" comments that have already been discussed are not only too stray and too remote from the decision to eliminate plaintiff's position as to constitute direct evidence of age discrimination, they are also too stray and too remote from the decision to support a reasonable indirect inference of age discrimination. [FN6] *See, e.g., Armendariz v. Pinkerton Tobacco Co.,* 58 F.3d 144, 153 (5th Cir.1995) (holding that comments by decisionmaker to another employee that she was "getting old" and "losing her memory" were too remote and vague to be probative of age discrimination against plaintiff), *cert. denied,* 65 U.S.L.W. 3349 (U.S. Jan. 8, 1996) (No. 95-702); *Duvall,* 1995 WL 581910, at \*10 (repeated "young turks" comment by decisionmaker lacked sufficient nexus with decision to eliminate plaintiff's position to defeat motion for summary judgment); *Perry v. Prudential-Bache Securities, Inc.,* 738 F.Supp. 843, 851, 853 n. 5 (D.N.J.1989) (holding that "new blood" and "new leadership" comments by decisionmaker, as well as joking comments regarding the age of plaintiff were insufficient to discredit the legitimate reasons put forward for the termination of plaintiff), *aff'd without op.,* 904 F.2d 696 (3d Cir.), *cert. denied,* 498 U.S. 598 (1990).

FN5. The attempt by defendants to explain this lack of salary increase was not supported by citation to the record and, under any conditions, plaintiff has produced evidence refuting the stated

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1996 WL 32139 (E.D.Pa.)
(Cite as: 1996 WL 32139 (E.D.Pa.))

Page 9

reason.

FN6. Indeed, several of the comments which plaintiff asserts are blatantly agist are undisputedly not so. Specifically, the "birthdays" comment was made in the undisputed context of plaintiff taking days off to celebrate the birthdays of various family members, so the only reasonable interpretation of Maloney's comment is that it was a criticism of plaintiff for taking days off, not that it was an attack on plaintiff because of his age. *See* Sosky Dep. at 102-03; Maloney Dep. at 103-04. In addition, the "wake up, Frank" comment, without more, is not clearly agist and indeed plaintiff at the time the comment was made did not identify it as an agist comment. *See* Sosky Dep. at 128-29. And the "years" comments were made in the context of either noting plaintiff's ability to help more inexperienced employees or noting that he should be performing his job better, not in a context that would allow a reasonable inference that Maloney considered plaintiff's many years of service to be a negative. *See* Sosky Dep. at 80-81.

**\*9** Having carefully reviewed the evidence of record and the various arguments by plaintiff, this Court concludes that plaintiff has failed to produce sufficient evidence so as to allow a reasonable factfinder to determine that the stated reason for the elimination of plaintiff's position was mere pretext even if plaintiff's allegedly poor performance played a role in that decision. As a result, the motion for summary judgment will be granted as to the claim by plaintiff of age discrimination in connection with his termination and the elimination of his position.

### B. *Hostile Work Environment*

With regard to claims of a hostile work environment, the Supreme Court has stated that:

[M]ere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview.... But Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers.

*Harris v. Forklift Sys., Inc.,* 114 S.Ct. 367, 370-71 (1993) (citations omitted). The Court of Appeals for the Third Circuit has stated that the following five elements must be met in order to establish a sexually hostile work environment:

(1) the employees suffered intentional discrimination because of their sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability.

*Spain v. Gallegos,* 26 F.3d 439, 447 (3d Cir.1994) . While *Harris* and *Spain* involved sexually hostile work environment claims brought pursuant to Title VII, the parties have assumed and this Court agrees with their assumption that these legal standards are transferrable to the ADEA context. *See Young v. Will County Dep't of Public Aid,* 882 F.2d 290, 294 (7th Cir.1989) (adopting Title VII sexual harassment standards in the context of an age hostile work environment claim).

Plaintiff points to the various comments already discussed as constituting the hostile work environment that he allegedly experienced from August 1992 to January 1993. Having reviewed these comments, this Court concludes that many of these comments do not on their face relate to plaintiff's age, and the remaining comments are too few and too indirect to demonstrate either pervasive and regular discrimination or that a reasonable person of the same age as plaintiff and in plaintiff's position would have been detrimentally affected by these comments. Indeed, this alleged "hostile work environment" was so subtle that plaintiff did not realize that he had been the subject of age discrimination as opposed to unexplained unfair treatment until he was actually terminated. *See*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-108

Not Reported in F.Supp.
1996 WL 32139 (E.D.Pa.)
**(Cite as: 1996 WL 32139 (E.D.Pa.))**

Page 10

Sosky Dep. at 69-72. This Court concludes, therefore, that plaintiff has failed to come forward with sufficient evidence to allow a reasonable factfinder to infer that he was subjected to a hostile work environment because of his age. As a result, the motion for summary judgment will be granted with respect to the claims by plaintiff of a hostile work environment based on his age.

C. *Retaliation*

**\*10** The ADEA provides that "[i]t shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has opposed any practice made unlawful by this section." 29 U.S.C. § 623(d). The PHRA similarly provides that "[i]t shall be an unlawful discriminatory practice ... (d) [f]or any ... employer ... to discriminate in any manner against any individual because such individual has opposed any practice forbidden by [the PHRA]." 43 Pa. Cons.Stat. Ann. § 955. In order for a plaintiff to make out a prima facie case of retaliation in the context of an employment discrimination claim he must demonstrate: "(1) that he engaged in protected conduct; (2) that he was subject to an adverse employment action subsequent to such activity; and (3) that a causal link exists between the protected conduct and the adverse action." *Barber,* 68 F.3d at 701.

It is true that plaintiff complained of his allegedly unfair treatment at the hands of Maloney to McArthur and McHenry in the IMS Human Relations Department, that McArthur told Maloney about the complaints of plaintiff, and that Maloney was critical of the fact that plaintiff had gone to McArthur. *See* Maloney Dep. at 173-74. But it is also undisputed that plaintiff never mentioned age discrimination to McArthur or McHenry. Sosky Dep. at 287. Plaintiff, without citing any legal authority to this effect, asks this Court to conclude that merely complaining generally about unfair treatment is protected by the ADEA and PHRA if notice of those complaints reaches the person who is allegedly engaging in age discrimination. Unfortunately for plaintiff, the Court of Appeals for the Third Circuit recently addressed this exact argument and declined to make this extension. *Barber,* 68 F.3d at 701-02. The motion for summary judgment will therefore be granted as to

the claims by plaintiff of retaliation.

III. CONCLUSION

For the foregoing reasons, the motion by defendants for summary judgment will be granted as to all of the claims by plaintiff.

An appropriate Order follows.

ORDER

AND NOW, this 24th day of January, 1996, upon consideration of the motion by defendants International Mill Service, Inc. and William Maloney for summary judgment (Document No. 16), the various responses by plaintiff Francis Sosky thereto, the various replies by defendants in further support of their motion, and the pleadings, depositions, answers to interrogatories, admissions on file, affidavits, and other discovery of record, having found that there are no genuine issues of material fact and that defendants are entitled to judgment in their favor as a matter of law for the reasons set forth in the foregoing memorandum, it is hereby ORDERED that the motion for summary judgment is GRANTED.

JUDGMENT IS HEREBY ENTERED in favor of defendants International Mill Service, Inc. and William Maloney and against plaintiff Francis Sosky.

This is a FINAL JUDGMENT on all claims.

1996 WL 32139 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

. 2:94CV02833  (Docket)

(May. 05, 1994)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**A-109**

Westlaw.

Not Reported in F.Supp.
1997 WL 164264 (E.D.Pa.), 70 Empl. Prac. Dec. P 44,690
(Cite as: 1997 WL 164264 (E.D.Pa.))

Page 1

c

**Motions, Pleadings and Filings**

United States District Court, E.D. Pennsylvania.
Janice JOHNSON
v.
SOUDERTON AREA SCHOOL DISTRICT.
No. CIV.A. 95-7171.

April 1, 1997.

*MEMORANDUM AND ORDER*

BECHTLE, J.

**\*1** Presently before the court is Defendant Souderton Area School District's ("Souderton") Motion for Summary Judgment and Plaintiff Janice Johnson's ("Johnson") response thereto. For the following reasons, the court will grant the motion.

*I. BACKGROUND*

Johnson alleges several employment discrimination claims against her former employer under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* 42 U.S.C. §§ 1981, 1982, 1983, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Con. Stat. Ann. § 962(c). She seeks monetary and injunctive relief under theories of hostile work environment, retaliation, and constructive discharge. The court has jurisdiction over Johnson's federal claims pursuant to 28 U.S.C. §§ 1331, 1343, and her state law claims pursuant to 28 U.S.C. § 1367.

The facts viewed in the light most favorable to Johnson are as follows. In August 1992, Souderton hired Johnson as a Class IV secretary to work for Assistant Principal/Athletic Director Scott Slingsby ("Slingsby"). [FN1] Johnson believes she was Souderton's only black full-time employee. (Am. Compl. at 3.) In 1992, co-worker Barbara Shaffer ("Shaffer") told Johnson that she must use the copier in the school's main office even though another copier was more convenient. (Johnson Dep. 5/14/96 at 54-55.) When Johnson approached Slingsby, he told her to use the copier in the main office. *Id.*

> FN1. Johnson alleges that she responded to an ad for a 180-day job. Souderton maintains that it was a 220-day per year job and has provided contemporaneous correspondence in support. (Def's Mem. Supp. Summ. J. Ex. 14.) Plaintiff has provided no evidence to support her assertion.

Slingsby was replaced by Thomas Speakman ("Speakman"). Johnson continued to work in the same position. [FN2] (Johnson Dep. 6/25/96 at 47; Pl.'s Resp. to Def.'s Req. for Admissions ¶ 4.) In June 1993, Johnson noticed an error in the number of sick days listed on her paycheck. (Johnson Dep. 6/25/96 at 82- 83.) She brought the error to the attention of Lowell Tinner ("Tinner"), Assistant to the Superintendent/Human Resources, and her next paycheck reflected the correct number. *Id.* at 83.

> FN2. Johnson characterizes the events as follows: "Plaintiff has been reassigned from Assistant Principal Slingsby to Assistant Principal Speakman, then finally demoted to receptionist/clerk...." (Pl.'s Resp. to Def.'s Mot. Summ. J. at 2.) However, she concedes that she continued to work in the same position and the change was merely that Speakman replaced Slingsby. (Pl.'s Resp. to Def.'s Req. for Admissions ¶ 4.)

On January 6, 1994, a racially offensive document (the "racist document") was discovered at the high school. A coworker showed it to Johnson, who complained about it to her supervisor. On February 10, 1994, she spoke at the school board meeting to address the issue. (Pl.'s Mem. Opp. Summ. J. at 2 & Ex. 16; Pl.'s Resp. to Def.'s Req. for Admissions ¶ 16.) The president of the school

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-110

Not Reported in F.Supp.
1997 WL 164264 (E.D.Pa.), 70 Empl. Prac. Dec. P 44,690
(Cite as: 1997 WL 164264 (E.D.Pa.))

Page 2

board then read a statement condemning racism, and an article containing his statements was published in the newspaper. (Def.'s Mem. Supp. Summ. J. Ex. 19.) In response to the racist document, the school board also devoted an annual forum to the topic of racism. (Pl.'s Resp. to Req. for Admissions ¶ 16.)

In Spring 1994, Johnson requested a more challenging position and a schedule with fewer days. In response, Souderton assigned her to work in the main office of the high school. (Tinner Aff. ¶ 4; Pl.'s Resp. to Req. for Admissions ¶ 5; Def.'s Mem. Supp. Summ. J. Ex. 15; Ex. 20; Ex. 21.) Her new supervisor was Andreas Demidont ("Demidont"), the high school principal. Johnson's rate of pay and job classification (Class IV secretary) remained the same. (Pl.'s Resp. to Def.'s Req. for Admissions ¶ 6.) Her duties included answering ninety-five percent of incoming phone calls, and typing the Daily Bulletin, the school's newsletter. (Def.'s Mem. Supp. Summ. J. Ex. 30.)

*2 Johnson alleges that unfair treatment of her intensified as a result of her complaints and her speech to the school board. (Am.Compl.¶ 14.) Specifically, she notes several episodes involving co-workers Tina Marsh ("Marsh"), Patricia Goodhart ("Goodhart"), and Karen Hengey ("Hengey"), the head secretary.

On December 14, 1994, Marsh asked Johnson to include an announcement in the Daily Bulletin that included the statement, "NO PERSONAL CHECKS." (Marsh Aff. ¶ 4; Johnson Dep. 5/25/96 at 101-03). Johnson omitted the statement. When Marsh asked Johnson why, she replied that she was entitled to edit the announcement. Marsh asked Johnson to notify her if she was going to edit her announcements. (Marsh Aff. ¶ 4.) Johnson again placed the edited announcement in the paper and Marsh again confronted her. (Johnson Dep. 5/14/96 at 187-89.)

In April 1994, Johnson typed a Daily Bulletin notice that read: "A short boys basketball meeting will be held TODAY at 2:30 in B-001." An unidentified person taped a copy of the announcement on the wall and wrote on it: "Where do tall boys meet?" (Johnson Dep. 07/24/96 at 31-33.)

On August 2, 1994, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"), alleging a hostile work environment and retaliation for her objections to racism at Souderton. She identified the racist document found on January 6, 1994, and the date of July 18, 1994, when she contends she was notified she had to work a 220-day year. (Def.'s Mem. Supp. Summ. J. Ex. 13.)

Sometime before September 1994, Goodhart submitted a list of students with unexcused absences to Johnson for publication in the Daily Bulletin. The list incorrectly contained the name of a student whose absence was excused. Because of the listing, the student could not make up exams. Goodhart contacted Johnson and told her that the notice had to be corrected so the student could take the exams. Johnson did not make the correction. Two days later, Goodhart asked Johnson why the correction was not made and she replied that she had chosen not to include the correction. Goodhart responded that she had no choice, and Johnson responded that she had no right to speak to her in that manner. Johnson complained to Slingsby and asked for an apology, which she did not receive. (Johnson Dep. 5/14/96 at 210-13; Goodhart Aff. ¶¶ 2-7.)

In November 1994, Plaintiff applied for two separate Class III secretarial positions at Souderton and was not selected for either. (Def.'s Mem. Supp. Summ. J. Exs. 17, 18.) (Johnson Dep. 5/14/96 at 76-78.)

The next month, Demidont asked Johnson to leave the Daily Bulletin computer disk at school so other secretaries could use it when she was absent. (Johnson Dep. 6/25/96 at 108.) He asked her again on February 3, 1995. In March 1995, Demidont and Hengey wrote separate memoranda asking her to leave the computer disk at the school. (Def.'s Mem. Supp. Summ. J. at 11.) Because she did not comply with these requests, on March 30, 1995, Demidont wrote a memorandum demanding Johnson leave the disk at school. (Johnson Dep. 6/25/96 at 111-15, 118-19.)

*3 On November 2, 1995, Hengey, Johnson, and Lisa Saverio were in the main office. The phone was ringing and had not been answered. Hengey shouted: "would someone please get the damn

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-111

Not Reported in F.Supp.
1997 WL 164264 (E.D.Pa.), 70 Empl. Prac. Dec. P 44,690
**(Cite as: 1997 WL 164264 (E.D.Pa.))**

Page 3

phone?" *Id.* at 120-21; Hengey Aff. ¶ 3. In the discussion that followed, Hengey told Johnson that she had authority over her because she was her superior. Hengey Aff. ¶ 4. Johnson confronted Hengey because she believed Hengey was swearing at her and referring to race when she said she was "superior." *Id.*

Johnson was listed in the 1994-95 and 1995-96 school directories as a "receptionist/secretary." (Johnson Dep. 6/25/96 at 136-37.) On January 18, 1996, a headset was given to Johnson to use. Johnson felt this was demeaning and reinforced her role as a receptionist. *Id.* at 123-29. When she approached Demidont about her concern, she was told that she did not have to wear the headset. (Demidont Aff. ¶ 13.) On January 22, 1996, Johnson resigned.

On November 14, 1995, Johnson commenced this civil action. In Count I of the Amended Complaint, she alleges that Souderton had "a policy and custom of harassment and intimidation of Black persons who complained of misconduct and mistreatment by the defendants," and that by "creating, condoning, and perpetuating a hostile work environment, [Souderton] has intentionally and with reckless indifference violated Title VII...." (Am. Compl. at 4.) In Count II, she alleges that Souderton, "through its agents, conspired with each other to conduct a campaign of intimidation and harassment." *Id.* at 4-5.

Souderton filed this motion for summary judgment on October 16, 1996, arguing that Johnson has not proven a prima facie case. [FN3] Johnson filed a responsive brief on October 28, 1996. [FN4] For the reasons set forth below, the court will grant Souderton's motion.

FN3. Souderton also argues that the court does not have subject matter jurisdiction over the claims and that the claims are barred by the statute of limitations. Because the court will dispose of the case on the substantive grounds, it will not address these issues.

FN4. In this response she states that the following events created a hostile work environment: the length of her work year,

being told by a co-worker that she could not use a particular copying machine, being demoted to receptionist from secretary, an error in her paycheck which reflected an incorrect number of sick leave days, a racially offensive document found on school property, being harassed and demeaned by co-workers Tina Marsh, Pat Goodhart, and Karen Hengey, and not being selected for two secretarial positions. (Pl.'s Mem. Opp. Summ. J. at 3.)

## II. *LEGAL STANDARD*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must draw all justifiable inferences in the light most favorable to the non-moving party. *Id.* If the record thus construed could not lead a trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**\*4** In response to a motion for summary judgment, the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings, but must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322. If the non-moving party does not so respond, summary judgment shall be entered in the moving party's favor because "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322-23.

## III. *DISCUSSION*

A.    *The    McDonnell-Douglas    Burden-Shifting*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-112

Not Reported in F.Supp.
1997 WL 164264 (E.D.Pa.), 70 Empl. Prac. Dec. P 44,690
**(Cite as: 1997 WL 164264 (E.D.Pa.))**

Page 4

*Framework*

For each of her claims, Johnson has the burden of first proving a prima facie case. If she meets that burden, the burden shifts to Souderton to articulate some legitimate, nondiscriminatory reason for the action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If it meets that burden, Johnson must then be afforded an opportunity to show that Souderton's stated reason was merely a pretext and the real reason was discriminatory. *Id.* at 804.

The *McDonnell Douglas* framework is proper in the context of a motion for summary judgment. If the plaintiff makes out a prima facie case, and the defendant articulates a nondiscriminatory reason, the plaintiff may defeat a summary judgment motion either by pointing to some evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994). These showings may be made by direct or circumstantial evidence. *Id.* If the plaintiff offers evidence to discredit the defendant's proffered reasons, she need not also advance evidence of discrimination beyond her prima facie case to defeat a summary judgment motion. *Id.* More specifically,

> to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered nondiscriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).

> To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of

credence," and hence infer "that the employer did not act for [the asserted] nondiscriminatory reasons."

**\*5** *Id.* at 764-65 (citations and footnote omitted).

B. *Title VII Claims*

Title VII of the Civil Rights Act provides:
> It shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). In enacting Title VII, Congress intended to "remov[e] artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

1. *Hostile Work Environment*

A Title VII hostile work environment exists only "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Waite v. Blair, Inc.,* 937 F.Supp. 460, 468 (W.D.Pa.1995) (quotations omitted).

To establish a prima facie case of hostile work environment, Johnson must show: (1) she suffered intentional discrimination because of her membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in the same position; and (5) the existence of respondeat superior liability. *West v. Philadelphia Elec. Co.,* 45 F.3d 744, 753 (3d Cir.1995). In determining whether an environment is hostile, the court looks to the totality of the circumstances, including the frequency and severity of the conduct; whether the conduct is physically threatening, humiliating or merely an offensive utterance; and whether the conduct unreasonably interferes with the victim's work performance. *Williams v. Perry,* 907 F.Supp.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-113

Not Reported in F.Supp.
1997 WL 164264 (E.D.Pa.), 70 Empl. Prac. Dec. P 44,690
**(Cite as: 1997 WL 164264 (E.D.Pa.))**

Page 5

838, 846 (M.D.Pa.), *aff'd,* 72 F.3d 125 (3d Cir.1995).

a. *Intentional Discrimination*

Johnson has demonstrated that she is a member of a protected class. However, she has not submitted evidence of intentional discrimination. Johnson must show that if she were a white person, she would not have been treated in the same manner. *See Andrews,* 895 F.2d at 1485. The record before the court shows random unconnected events resulting from workplace discord. Most of the complaints are that she was spoken to in a discourteous manner. This alone is insufficient. *Waite,* 937 F.Supp. at 468. There is nothing other than Johnson's bald allegation in the Amended Complaint to indicate that the events were motivated by discrimination or retaliation. At the summary judgment stage, she must present actual evidence relating to the elements of her claims and she has failed to do so in this instance.

b. *Pervasive and Regular*

**\*6** Johnson must also show that the alleged harassment was pervasive and regular because, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.,* 519 U.S. 17, 21 (1993). Harassment is pervasive when it occurs "either in concert or with regularity." *Andrews,* 895 F.2d at 1484.

Viewing the events in the light most favorable to Johnson, there is no evidence that the alleged instances of discrimination were pervasive or regular. The nine alleged events spanned more than three years. There is no similarity or common theme connecting the events. A number of different persons are involved and there is no evidence of concerted action.

c. *Subjective Standard*

For the purpose of a summary judgment motion, Johnson has met the subjective standard of proving that she was detrimentally affected by the alleged events.

d. *Objective Standard*

Johnson must also show that a reasonable person of the same race in the same circumstances would be detrimentally affected. Johnson has alleged one incident that was objectively motivated by racial animus--the racist document. [FN5] A reasonable person of the same race in the same circumstances could be detrimentally affected by the racist letter. However, Johnson has failed to sustain her burden on the other events which would be necessary to prove a hostile environment. The fact that Johnson found the conditions intolerable, alone, will not suffice because Title VII does not guarantee a work environment free of stress. *Waite,* 937 F.Supp. at 468. One event that was promptly remedied can not constitute a hostile environment. There is no objective evidence that the other events were based on racial discrimination or retaliation or that a reasonable person would be affected by them.

> FN5. The document was not addressed to Johnson, nor did it name her.

e. *Respondeat Superior*

An employer can be held liable only when it has been proven that it knew or should have known of the offensive conduct. Prompt remediation absolves the employer of liability. *Bouton v. BMW of N. Am., Inc.,* 29 F.3d 103, 110 (3d Cir.1994). Thus, if management-level employees had actual or constructive knowledge of the existence of a hostile environment, and failed to take prompt and adequate remedial action, the employer will be held liable. *See Andrews,* 895 F.2d at 1486. [FN6]

> FN6. Although *Andrews* is a sexual harassment case, the applicable legal standards also to hostile work environment cases based on racial animus. *Waite,* 937 F.Supp. at 468.

Johnson did not tell anyone that she believed the events were motivated by discrimination or retaliation. The only objectively race-related event, the racist document was promptly addressed by Souderton. Even if it could be found that the other events were motivated by racial animus or retaliation, Johnson has admitted to facts that constitute prompt remediation. [FN7] Under the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**A-114**

Not Reported in F.Supp.
1997 WL 164264 (E.D.Pa.), 70 Empl. Prac. Dec. P 44,690
**(Cite as: 1997 WL 164264 (E.D.Pa.))**

Page 6

facts, there can be no respondeat superior liability on the part of Souderton. Because the elements of a prima facie case have not been met, the court will grant summary judgment in favor of Souderton on this claim.

> FN7. *See* Johnson Dep. 5/14/96 at 66-68; 91 (xerox incident); 83 (paycheck incident); Demidont Aff. ¶ 13 (headset incident); Pl.'s Resp. to Req. for Admissions ¶ 12; Johnson Dep. 6/25/96 at 28-31 (racist document).

### 2. *Constructive Retaliatory Discharge* [FN8]

> FN8. Souderton also argues that the court does not have jurisdiction over this claim because it was not presented to the Equal Employment Opportunity Commission ("EEOC"). (Def.'s Mem. Supp. Summ. J. at 47.) The claim of discharge could be found to be reasonably within the scope of Johnson's EEOC claim which alleged retaliation and hostile work environment. Therefore, the court does not dismiss it on that ground. *See Waiters v. Parsons,* 729 F.2d 233, 235 (3d Cir.1984).

### a. *Constructive Discharge*

**\*7** To make out a constructive discharge claim, Johnson must show that Souderton knowingly permitted conditions that were so intolerable that a reasonable person would have been compelled to resign. *Spangle v. Valley Forge Sewer Auth.,* 839 F.2d 171, 173 (3d Cir.1988). She must demonstrate that "the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign." *Id.* Johnson has failed to sustain her burden of proof.

Johnson argues that she was demoted because her new position also required her to answer phones and she was listed as a "secretary/receptionist" in the school directory. She has acknowledged that she requested a transfer. Further, her rate of pay, job classification, and benefits remained the same. Johnson has not demonstrated that the transfer was a constructive discharge. *Davis v. Sheraton Society Hill Hilton,* 907 F.Supp. 896, 903 (E.D.Pa.1995).

There is no evidence that the conditions were intolerable. Nor is there evidence that Souderton knowingly permitted conditions that were intolerable. There is no evidence from which a trier of fact could find that a reasonable person in Johnson's shoes would feel compelled to resign. Johnson brought to Souderton's attention a number of incidents but never claimed that they were related. She has acknowledged that Souderton addressed the complaints. Further, she admits to actions that either caused or exacerbated the problems. The facts presented do not support a prima facie case of constructive discharge.

### b. *Retaliation*

Johnson has also alleged retaliation. The relevant statutory provision provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified or assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3. To make out a prima facie case, Johnson must show that (1) she engaged in a protected activity; (2) Souderton took an adverse employment action subsequent to or contemporaneous with that activity; and (3) there is a causal link between the protected activity and the adverse employment action. *Charlton v. Paramus Bd. of Educ.,* 25 F.3d 194, 201 (3d Cir.) *cert. denied,* 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994).

Johnson alleges that the constructive discharge and/or transfer were retaliatory. She concedes that the motive could not have been her PHRC/EEOC complaint because the transfer occurred in July 1994, prior to the filing of the EEOC complaint in August 1994. (Johnson Dep. 5/14/96 at 181-82.) She alleges that the transfer was in retaliation for her addressing the school board February 10, 1994.

### 1. *Protected Activity*

**\*8** Johnson's speech to the school board was a protected activity. While this was not the typical

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**A-115**

Not Reported in F.Supp.
1997 WL 164264 (E.D.Pa.), 70 Empl. Prac. Dec. P 44,690
**(Cite as: 1997 WL 164264 (E.D.Pa.))**

case of speaking out against illegal employment practices, Johnson was speaking out against racism in general and at Souderton specifically. The court finds that this is the type of conduct that the statute was intended to protect.

2. *Adverse Employment Action*

Johnson has failed to demonstrate that an adverse employment action was taken against her. The facts before the court show that she asked for a more challenging position and fewer work days and was transferred to a position with more demands and given a schedule with less work days.

3. *Causal Connection*

Even assuming that Johnson has proven an adverse employment action, she has failed to show causation. A plaintiff may show causation by actual facts or relying on a temporal inference. Her speech before the school board was five months prior to the transfer and lacks the temporal proximity required to create an inference of retaliation. *Woods v. Bentsen*, 889 F.Supp. 179, 187 n. 15 (E.D.Pa.1995) (stating that four months is too attenuated to create inference). Johnson has provided no evidence to support a causal connection between the events. The court will grant summary judgment in favor of Souderton on this claim.

c. *Failure to Hire for Secretarial Positions*

Johnson also alleges that she was not hired for two Class III secretary positions for which she applied, in retaliation for her actions. This claim also fails. [FN9] Again, there is no showing of a causal connection.

> FN9. Although it was not alleged, the court also notes that Johnson has not supplied any evidence from which the trier of fact could find that she was not hired for the positions because of her race. She has not even alleged that she was qualified for the positions. Even if she had made out a prima facie case by showing that she was qualified for the position and that the chosen applicant was white, Souderton has presented a nondiscriminatory

reason--Johnson was not qualified and the chosen applicants were. She has not pointed to any evidence from which a reasonable factfinder could either disbelieve Souderton's articulated reason or believe that discrimination was more likely than not a motivating cause. *Fuentes*, 32 F.3d at 764.

Souderton rejected Johnson's application for these positions eight months after she addressed the school board. There can be no temporal inference of discrimination or retaliation. Johnson has failed to show the necessary causal link between her action and the failure to hire.

Even if the court were to find that Johnson has proven a prima facie case, Souderton has produced a legitimate nondiscriminatory reason for not hiring Johnson for the positions--the individuals hired were more qualified. (Def.'s Mem. Supp. Summ. J. at 43; Demidont Aff. ¶¶ 5-6; Tinner Aff. ¶ 8.) Johnson admits that the candidate chosen for the first position had more seniority than she did and that she does not know why the other candidate was selected. (Johnson Dep. 5/14/96 at 174.) While it is not necessary to provide additional evidence to rebut a proffered reason, Johnson has provided the court with no evidence from which a reasonable factfinder could disbelieve the proffered reason. She admits in her deposition that she has no knowledge of the selected applicants' qualifications or the factors considered in the decision and she admits that she has no evidence that the decisions were discriminatory. *Id.* at 178-80. The court will therefore grant summary judgment in favor of Souderton on this claim.

C. *42 U.S.C. §§ 1981, 1982, and 1983 Claims*

**\*9** Johnson argues that she has stated claims under 42 U.S.C. §§ 1981, 1982, and 1983. (Pl.'s Mem. Opp. Summ. J. at 14.) Souderton objects to the court's consideration thereof on the ground that these claims were not properly pled in the Amended Complaint. While the court agrees that the pleading is lacking, it finds that the claims were sufficiently referenced and it will address them.

To establish a claim under 42 U.S.C. § 1981, Johnson must allege facts to show: (1) she is a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**A-116**

Not Reported in F.Supp.
1997 WL 164264 (E.D.Pa.), 70 Empl. Prac. Dec. P 44,690
**(Cite as: 1997 WL 164264 (E.D.Pa.))**

member of a racial minority; (2) Souderton's intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the enumerated activities. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 609, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); *Flagg v. Control Data*, 806 F.Supp. 1218, 1223 (E.D.Pa.1992), *aff'd*, 998 F.2d 1002 (3d Cir.1993). Johnson has shown that she is a member of a racial minority. However, she has failed to submit evidence to prove a prima facie case on the remaining prongs.

42 U.S.C. § 1982 relates to real and personal property rights. It does not encompass at-will employment discrimination claims. *See, e.g., Poles v. St. Joseph's Univ.*, Civ. A. No. 92-6797, 1995 WL 542246, at *6, (E.D.Pa. Sept.11, 1995); *Lewis v. B.P. Oil, Inc.*, Civ. A. No. 88-5561, 1990 WL 6116, at *2 (E.D.Pa. Jan.26, 1990).

To establish a claim against a municipality or subdivision under 42 U.S.C. § 1981 or § 1983, Johnson must show evidence of a custom or policy of discrimination. She must also show that her rights protected by § 1981 were violated by that custom or policy. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-37, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Johnson has not and cannot prove a custom or policy of discrimination based on the facts she has presented to the court. *See Andrews*, 895 F.2d at 1480 (defining custom and policy). The court will grant summary judgment in favor of Souderton on these claims.

### D. *The PHRA Claim*

It is well-settled that the PHRA should be interpreted consistent with Title VII. *Clark v. Commonwealth*, 885 F.Supp. 694, 714 (E.D.Pa.1995). Therefore, the court will grant summary judgment in favor of Souderton on the PHRA claim as well.

### E. *Judgment as a Matter of Law*

The court has viewed the events in the light most favorable to Johnson. Johnson has described a number of incidents and stated that she feels they were motivated by discrimination or retaliation.

Not only has Souderton shown that Johnson has not proven a prima facie case, it has also submitted evidence constituting non-discriminatory reasons for each event to contradict Johnson's unsupported allegations. [FN10] Furthermore, Johnson admits that she has no evidence to support certain claims. [FN11]

FN10. *See* Tinner Aff. ¶¶ 5-6 (declaring that Johnson requested a job transfer and shorter hours); *id.* ¶ 7 (declaring that the job was the same but she was paid less because she was working the shorter year as requested); *id.* ¶ 8 (declaring that he hired the other secretaries over Johnson because they were more qualified); Demidont Aff. ¶ 7 (declaring that he took action when he learned of the racist document); *id.* ¶ 8 (declaring that Johnson spoke to the school board about racism and he encouraged her to speak with the superintendent); *id.* ¶ 11 (declaring that he asked Johnson to leave the computer disk at work so the other secretaries could use it when she was absent); *id.* (declaring that he approached her again several times); *id.* ¶ 13 (declaring that he ordered the headsets for the secretaries believing that it would make their jobs easier and that she was never required to wear one); Hengey Aff. ¶ 11 (declaring the facts relating to the disk); *id.* ¶ 3 (declaring that she shouted in the office to get someone to answer the phone); Marsh Aff. ¶ 4 (declaring that the incident with Johnson occurred because the language had to be exact, Johnson was asked to print it and refused); Goodhart Aff. ¶ 4 (declaring that the altercation with Johnson occurred because Johnson did not print time sensitive notice in Daily Bulletin); Moore Aff. ¶ 7 (declaring that she replaced Johnson and the disk is important for daily printing); *id.* (declaring that the time Johnson spent to complete the task was inordinately long); Saverio Aff. ¶ 6 (declaring facts of altercation between Johnson and Hengey); *id.* ¶ 7 (declaring that Johnson did not follow directions given by Hengey); *id.* ¶ 8 (declaring that she personally had to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**A-117**

Not Reported in F.Supp.                                                                     Page 9
1997 WL 164264 (E.D.Pa.), 70 Empl. Prac. Dec. P 44,690
**(Cite as: 1997 WL 164264 (E.D.Pa.))**

retype the Daily Bulletin a number of times because Johnson refused to leave the disk).

FN11. *See* Johnson Dep. 6/25/96 at 44 (days of work per year); 78-79 (paycheck/sick leave); 115 (admitting she has no evidence that the memos regarding the disks were in retaliation); 113 (admitting that Demidont told her to leave the disk at work and she chose to disregard his order); 121 (admitting that she has no evidence that Hengey yelled at her in retaliation for Johnson's speech before the school board and admitting that it was because she did not answer the phone).

**\*10** In response to Souderton's Motion for Summary Judgment, Johnson merely reaffirms her allegations which are based upon her subjective feelings. Such assertions can not defeat a motion for summary judgment. *Williams v. Perry,* 907 F.Supp. 838, 841 (M.D.Pa.1995). At this stage, the law requires affirmative evidence. *Williams v. Borough of W. Chester,* 891 F.2d 458, 460 (3d Cir.1989). Johnson has provided none. She has failed to show the court that there is a genuine issue for trial. Accordingly, the court must grant summary judgment in favor of Souderton.

IV. *CONCLUSION*

For the above reasons, the court will grant Souderton's Motion for Summary Judgment.

An appropriate Order follows.

*ORDER*
AND NOW, TO WIT, this day of April, 1997, upon consideration of Defendant's Motion for Summary Judgment, and Plaintiff's response thereto, IT IS ORDERED that said motion is GRANTED. Judgment is entered in favor of Defendant Souderton Area School District and against Plaintiff Janice Johnson.

1997 WL 164264 (E.D.Pa.), 70 Empl. Prac. Dec. P 44,690

**Motions, Pleadings and Filings (Back to top)**

. 2:95CV07171 (Docket)

(Nov. 14, 1995)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**A-118**

**Westlaw.**

Not Reported in F.Supp.2d
2000 WL 100118 (E.D.Pa.), 77 Empl. Prac. Dec. P 46,324
**(Cite as: 2000 WL 100118 (E.D.Pa.))**

Page 1

**H**

United States District Court, E.D. Pennsylvania.
Jacqueline WIGGINS, Plaintiff,
v.
COMMUNITY COLLEGE OF PHILADELPHIA,
Defendant.
**No. CIV.A. 99-1822.**

Jan. 28, 2000.

*MEMORANDUM*

BUCKWALTER.

*1 Presently before the Court in this three-count lawsuit alleging discrimination, is Defendant Community College of Philadelphia's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, and Plaintiff Jacqueline Wiggins' response thereto. For the following reasons, Defendant's Motion will be granted.

I. *BACKGROUND*

Plaintiff holds an M.Ed. in Education. On October 9, 1989, she was hired as a part-time English instructor at the Community College of Philadelphia. She held this position until September 18, 1995 when she became a visiting Lecturer in the Defendant's English Department, a position that she held until May, 1997.

In January, 1997, Plaintiff applied for a full-time tenure-track teaching position in the Defendant's English Department. Her application was in response to a December MLA Job List posting which stated in pertinent part: "[t]wo anticipated tenure-track, full-time openings for Fall 1997. Minimum qualifications M.A. in English or closely related field and demonstrated commitment to teaching composition to urban, non-traditional students." In July, 1997, Plaintiff was informed by Douglas Buchholz, English Department Hiring Committee Chair that she was not selected. Plaintiff then brought this three-count action wherein Count One purports to state a claim for race discrimination

in violation of Title VII of the Civil Rights At of 1964 ("Title VII"), as amended, 42 U.S.C.A. § 2000(e), *et seq.*. Count Two purports to state a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. § 621 *et seq.*. Count Three purports to state a claim for race discrimination under 42 U.S.C.A. § 1981 ("Section 1981").

II. *STANDARD*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp.. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is "material" if it might affect the outcome of the case under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, an issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative; rather, the court must consider the evidence of the non-moving party as true, drawing all justifiable inferences arising from the evidence in favor of the non-moving party. *See id.* at 255. If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party. *See id.*

*2 If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial ." Fed.R.Civ.P. 56(e). In doing so, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-119

Not Reported in F.Supp.2d
2000 WL 100118 (E.D.Pa.), 77 Empl. Prac. Dec. P 46,324
(Cite as: 2000 WL 100118 (E.D.Pa.))

Page 2

475 U.S. 574, 586 (1986). If the evidence of the non-moving party is "merely colorable," or is "not significantly probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249-50.

## III. *DISCUSSION*

Plaintiff claims that she was not offered the full-time tenure-track position in Defendant's English Department because of her race, sex and/or age. Plaintiff contends that she did meet the minimal qualifications for the position, in that she has a degree in a closely related field as an M.A. in English.

To establish a *prima facie* case of sex discrimination under Title VII, age discrimination under the ADEA [FN1], and racial discrimination under Section 1981 [FN2], a plaintiff must show that: (1) she is a member of a protected class or minority group; (2) she was qualified for the position at issue; (3) she suffered an adverse employment decision; and (4) the position was ultimately filled by a person not of the protected class, *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973), or that similarly situated non-protected persons were treated more favorably, *see Josey v. John R. Hollingworth Corp.,* 996 F.2d 632, 638 (3d Cir.1993). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the discharge. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981). Even if the defendant meets that burden, the plaintiff may still prevail by demonstrating that the reason for the discharge was merely pretextual. *See id.* at 256. Such a showing is sufficient to defeat the granting of a summary judgment in favor of the defendant. *See Sheridan,* 100 F.3d at 1066-69. The ultimate burden of persuasion, however, remains at all times with the plaintiff. *See United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716 (1983). While Plaintiff has established that she is a member of a protected class, that she was not offered the teaching position at issue and that Defendants did hire individuals outside of that protected class, defendant asserts that Plaintiff cannot establish a *prima facie* case of discrimination because she was not qualified for the position for which she applied because she does not hold a Masters Degree in English. Defendant concluded that Plaintiff's

Masters Degree in Education was not "closely related" to a Masters in English. Herein lies the only issue raised by Plaintiff in response to Defendant's Motion for Summary Judgment-- whether Plaintiff's M.Ed. in English was "closely related" to a M.A. in English.

FN1. In an age discrimination action under the ADEA, the plaintiff has the initial burden of establishing a *prima facie* case by demonstrating that he or she: (1) is a member of the protected group; (2) was qualified to perform the job at issue; (3) was discharged despite being qualified for the position; and (4) was replaced by another employee sufficiently younger to permit an inference of age discrimination. *See Simpson v. Kay Jewelers, Division of Sterling, Inc.,* 142 F.3d 639 (3d Cir.1998); *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994).

FN2. The complainant in a Section 1981 claim must carry the initial burden of establishing a *prima facie* case of racial discrimination by showing the following: 1) that she belongs to a racial minority; 2) that she applied and was qualified for a job for which the employer was seeking applicants; 3) that, despite his qualifications, she was rejected; and 4) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 801, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**\*3** As supporting evidence, Plaintiff provides this Court with nothing more than the MLA Job List posting, a copy of a Faculty Federation *Newsletter* article [FN3], and a "Letter to the Editor" responding to the *Newsletter* Article. It is doubtful that Plaintiff has proved even a *prima facie* showing of intentional discrimination--based on her race, age, or sex--in employment positions for which she may or may not have been qualified. *See General Building Contractors Assn., Inc. v. Pennsylvania,* 458 U.S. 375, 382-91, 102 S.Ct. 3141, 3145-50, 73

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**A-120**

Not Reported in F.Supp.2d
2000 WL 100118 (E.D.Pa.), 77 Empl. Prac. Dec. P 46,324
**(Cite as: 2000 WL 100118 (E.D.Pa.))**

Page 3

L.Ed.2d. 835 (1982).

> FN3. This particular Affidavit explicitly states that the "beneficiaries" of the Defendant's hiring practices have, with one exception, been white Faculty. However, the author of the affidavit--which is more of a letter of recommendation, than "sworn testimony"--asserts that Defendant's tendency to hire more white Faculty is not attributed to "intent but rather our having developed institutional arrangements without thinking very much about their implications for affirmative action."

Plaintiff has a burden of setting forth specific facts showing that there is a genuine issue for trial. However, as stated above, if the evidence of the non-moving party is "merely colorable," or is "not significantly probative," summary judgment may be granted. This Court is unable to conclude that Plaintiff has provided anything beyond mere articles and/or letters of recommendation calling the Defendant's criteria for hiring into question. A Plaintiff's belief in her performance abilities, without more, does not establish pretext or discriminatory intent. *Billet v. CIGNA Corp.,* 940 F.2d 812, 825 (3d Cir.1991); *see Simpson v. Kay Jewelers,* 142 F.3d 639, 647 (3d Cir.1998) (employee's judgment as to the importance of employer's stated criterion for its decision is irrelevant). [FN4] Therefore, Defendant's Motion for Summary Judgment must be granted on all counts.

> FN4. Furthermore, hearsay statements that are not capable of being admissible at trial must not be considered on a summary judgment motion. *Philbin v. Trans Union Corp.,* 101 F.3d 957, 961 n. 1 (3d Cir.1996).

IV. *CONCLUSION*

Plaintiff has failed to do more than "simply show that there is some metaphysical doubt as to the material facts." *Zenith Radio Corp.,* 475 U.S., at 586 . As a result, I must grant Defendant's Motion for Summary Judgment. Notwithstanding Plaintiff's inability to establish a *prima facie* case of discrimination of age, sex, and/or race, Plaintiff has

also failed to provide any evidence of pretextual discriminatory intent on the part of Defendant.

An appropriate Order follows.

*ORDER*

AND NOW, this 28th day of January, 2000, upon consideration of Defendant Community College of Philadelphia's Motion for Summary Judgment and Plaintiff Jacqueline Wiggins' Response thereto, it is hereby ORDERED and DECREED that said Motion is GRANTED.

Judgment is entered in favor of the defendant Community College of Philadelphia, and against the plaintiff Jacqueline Wiggins.

This case shall be marked CLOSED.

2000 WL 100118 (E.D.Pa.), 77 Empl. Prac. Dec. P 46,324

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**A-121**